William F.Hagenloch v. Commissioner.
Hagenloch v. Commissioner
Docket No. 893-66.
United States Tax Court
T.C. Memo 1967-155; 1967 Tax Ct. Memo LEXIS 104; 26 T.C.M. (CCH) 722; T.C.M. (RIA) 67155; July 27, 1967
Robert S. Lappin, 80 Federal, Boston, Mass., for the petitioner. Robert B. Dugan, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, *105 Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1962 in the amount of $1,581.24. The sole issue for determination is whether the amount of $6,500 paid by petitioner to his former wife was properly deductible by him under the provisions of section 215. [1]
Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual who had his legal residence in Bedford, Massachusetts, at the time of the filing of the petition herein. He timely filed his Federal income tax return for the taxable year 1962 with the district director of internal revenue, Boston, Massachusetts. Petitioner and Alma T. Hagenloch were married in 1934. Four children were born of this marriage. Three of said children were minors in 1962. Sometime prior to 1962, petitioner and his wife, Alma T. Hagenloch, separated and no longer lived together. In the fall of 1961, petitioner requested Alma T. Hagenloch to proceed for an uncontested divorce in the Commonwealth of Massachusetts. On October 30, 1961, petitioner offered Alma T. Hagenloch the following in the *106 event of a divorce: (a) $5,000 in cash; (b) conveyance of the house, free of any mortgage, where she and the children lived; (c) $400 per month for 10 years and 3 months; (d) $1,200 per year for each child until the attainment of 21 years of age or the occurrence of prior marriage or death; and (e) $1,200 per year for tuition for each child upon reaching college age. Thereafter, Alma T. Hagenloch, through her attorney, countered with the request that petitioner deed their home to her and pay her $20,000 in addition to a monthly payment of $400 for her support and $100 per month for each minor child. On January 22, 1962, petitioner offered through his attorney to pay the following amounts: (a) $15,000 lump sum - $7,500 being paid in cash and $2,500 each year for a 3-year period; (b) $400 per month for her life or until her remarriage; (c) $1,200 per year for each child until the attainment of 21 years of age, or prior marriage, employment, death, or adoption; (d) $1,200 per year for tuition for each child for a period of up to 4 years at an accredited school or college; (e) conveyance of the residence and its contents, free of mortgage; and (f) a $20,000 life *107 insurance policy payable to trustees to insure compliance with the agreement during the lives of the parties. Included in the property held jointly by petitioner and Alma T. Hagenloch prior to their divorce were their nine-room residence at 18 Thackeray Road, Wellesley Hills, Massachusetts, a lot of land adjoining this residence, and a joint checking account. On or about May 17, 1962, petitioner and Alma T. Hagenloch entered into an agreement with respect to the financial aspects of the termination of their marital relationship. The pertinent provisions of said agreement are as follows: II RECITALS * * * The purpose of this agreement is to provide for a final and complete settlement of all matters relating to the interests of the husband and wife in and their obligations with respect to all present and future property, support, alimony, custody of children and rights of visitation and the rights of the husband and wife in their respective estates in the case of the decease of either of them, such settlement as provided for herein to become finally effectual on the date of a final decree of divorce being granted on the wife's libel as aforementioned. Each of the parties *108 is aware of the financial resources of the other and has been individually advised by Counsel of their own choice. The parties have incorporated in this agreement their entire understanding and no oral statement or prior oral or written matter extrinsic to this agreement shall have any force or effect. The parties are not relying upon any representations other than those expressly set forth herein. III COVENANTS OF THE HUSBAND * * * 5. So long as the covenants of the wife as herein expressed are performed the husband agrees to pay either directly to the wife or to the trustee for the wife: (a) During his life and commencing with the first day of the month following the entry of a decree nisi of divorce he will pay $400.00 a month to the said wife for her life or until her death or remarriage except that in the month following the entry of the decree of absolute divorce he will pay to the wife $6900; in the thirteenth month after decree absolute he will pay to the wife $2400; in the twenty-fifth month after decree absolute he will pay to the wife $2400; and in the thirty-seventh month after decree absolute he will pay to the wife $2400. (b) In addition the husband agrees *109 to pay during his lifetime, $1200 a year for each minor child until each child reaches the age of twenty-one or sooner becomes married or employed and self supporting or dies or is adopted. The payments may be made monthly to the said wife or to her trustee with the first payment being due and payable on the first day of the month following the date the wife obtains a decree nisi. (c) In addition the husband agrees to pay $1200 a year toward college or junior college tuition for each minor child said payments being limited to a period of four years of college or junior college attendance. It is mutually agreed between the parties hereto that the matter of the college to be attended by each child shall be discussed immediately prior to the time each child is preparing to enter college or junior college. (d) In addition the husband agrees that he will assign life insurance in the amount of $20,000 on his life and that the insurance policy or policies so assigned to the trustees is to insure said husband's compliance with this agreement during his lifetime. * * *
IV COVENANTS OF THE WIFE * * * 1. The wife agrees to accept the provisions of this agreement, all of which *110 has been explained to her by her Counsel, in lieu of all past, present and future alimony or other claims under the law by virtue of her marriage to the said husband. * * *
3. The wife agrees that she will whenever requested by the husband, release all rights of hers in any real or personal estate, other than as above described to become her property, now or hereafter belonging to him, and execute and deliver to him or his representatives such instrument or instruments as are necessary to enable him most fully and advantageously to enjoy, use, or sell any or all of his real or personal property free from all dower and other rights of hers; whenever requested by the husband or his representatives she will execute and deliver to the trustee for the husband for the time being hereunder one or more powers of attorney authorizing said trustee to release dower; upon the death of the husband the wife will make no claim for community property rights, dower, homestead, or statutory heir-at-law, or any rights under the laws of testacy or intestacy, and will hold any and every estate, share, interest, right, title and claim which she may have in and to any of his property whether real *111 or personal to the use of and she will upon demand convey, assign and transfer the same to the trustee for the husband in trust to distribute the same to the persons and in the proportions in which the said property would have been distributed had she died before the husband, and she will do whatever is proper and execute whatever agreements or instruments are proper to the fullest and most ample performance of her covenants herein set forth. The amounts and conditions set forth in paragraph 5 of the agreement are substantially the same as those offered by petitioner on January 22, 1962, except that the additional cash amount was reduced from $15,000 to $12,500. [2] Such reduction was in consideration of Alma T. Hagenloch's acquiring sole title to the unimproved land located in Wellesley Hills, Massachusetts, adjacent to the residence. The sum of $12,500 was made payable in installments for the convenience of petitioner because he was financially unable to make the payment in full at the time the divorce became final. Petitioner's attorney, John F. Lombard, *112 prepared the agreement of May 17, 1962. On June 29, 1962, the Probate Court, Norfolk County, Massachusetts, entered a decree nisi of divorce in the case of the petitioner and Alma T. Hagenloch. The decree of divorce became absolute after the expiration of six months. The agreement was incorporated in the divorce decree by reference. Between July 1, 1962 and December 31, 1962, petitioner paid Alma T. Hagenloch, pursuant to the agreement of May 17, 1962, $700 each month, $300 of which was for support of her minor children and $400 of which was for her support. In December 1962, petitioner, in addition to the $700, and by separate check, paid $6,500 to Alma T. Hagenloch. Opinion Our concern herein is with the proper characterization of $6,500 paid by petitioner to his former wife in December 1962.[3] Petitioner contends that this amount represented a partial payment of an obligation imposed upon him by virtue of the marital relationship and that payment of such obligation was subject to contingencies, with the result that the $6,500 was includable in the former wife's gross income under section 71 and deductible by petitioner under section 215. [4] See sec. 1.71-1(d)(3), Income Tax Regs. *113 ; cf. Helen Stewart Cramer, 36 T.C. 1136 (1961). Respondent counters with the assertions that the obligation, of which the payment in question was a part, represented a property settlement which does not qualify under sections 71 and 215 and that, in any event, it was an unconditional obligation to pay a principal sum over a period of less than 10 years, with the result that section 71(c) applies. [5]
*114 Determination of the real substance of a divorce settlement and the effect of provisions respecting payment, where the terms of the agreement or decree are not free from doubt, turns upon the particular facts and circumstances. The courts are neither bound by the labels which the parties have placed upon their arrangements nor required automatically to accept the semantical expressions of the parties. Bardwell v. Commissioner, 318 F. 2d 786 (C.A. 10, 1963), affirming 38 T.C. 84 (1962); Riddell v. Guggenheim, 281 F. 2d 836 (C.A. 9, 1960); Jerome A. Blate, 34 T.C. 121 (1960); Ann Hairston Ryker, 33 T.C. 924 (1960). Consequently, each case in this area is usually sui generis. We turn first to the question of how the additional amounts above the $400 monthly were to be paid. Petitioner insists that these additional amounts were not payable in the event of his death or the death or remarriage of his former wife. At first blush, a literal reading of Article III, paragraph 5(a), of the May 17, 1962 agreement seems to bear him out, [6] particularly in view of the fact that the irregular amounts specified include the $400 *115 monthly payment as well as the extra payment. But his contention does not stand up under searching analysis. The "exception" clause unqualifiedly modifies the entire undertaking to make payments. If the agreement had intended to mean what petitioner claims, the language would more appropriately have read "except that * * * the amount shall be $6900." Moreover, if the contingencies of the former wife's death or remarriage were applicable, the contingency of petitioner's own death would seem also to apply. Such an interpretation, however, would dilute the significance of the provision in Article III, paragraph 5(d), by which a $20,000 insurance policy on petitioner's life was assigned to insure his compliance with the agreement. We note also that, in both of the written proposals during the course of negotiations, petitioner's counsel clearly separated the cash settlement from the monthly payments, offering the former without qualification and conditioning only the latter on a fixed time period or the former wife's death or remarriage. Moreover, the provision for the payment of the additional aggregate amount of $12,500 over a threeyear span was merely for the convenience of the petitioner *116 because of the circumstances of his finances. Under these circumstances, we accord little weight to the testimony of petitioner's counsel, who drafted the final agreement, that he intended to make the additional payments subject to the same conditions as the regular monthly stipend. The mere intertwining of the two types of payment into one provision can be characterized as simply a "manifest attempt to camouflage the design" belied by the "history of the transaction." Fidler v. Commissioner, 231 F. 2d 138, 142 (C.A. 9, 1956), modifying 20 T.C. 1081 (1953); cf. Alan E. Ashcraft, Jr., 28 T.C. 356 (1957), affd. 252 F. 2d 200 (C.A. 7, 1958). We hold that petitioner's obligation to pay the additional $12,500 was unconditional and that, since the obligation was to be liquidated over a period of less than 10 years, it is not includable in the former wife's income by virtue of the provisions of section 71(c) and therefore is not deductible by petitioner. *117 Alternatively, we are not convinced that the additional monetary payments beyond the $400 monthly did not constitute a property settlement rather than an obligation imposed by reason of the marital relationship within the meaning of section 71. We agree with petitioner that the layman's characterization of the additional payments by his former wife as a "property settlement" is not entitled to much weight. The fact is, however, that she clearly did consider the additional cash settlement as something quite different from the $400 monthly payment and that her view in this regard is confirmed by the separateness with which these two elements were treated in the negotiations. Moreover, the record is devoid of any evidence as to whether or not she had any particular property interests which might have been covered by the additional $12,500. Finally, the fact that the cash settlement was adjusted downward from $15,000 at the last minute to reflect a disposition of ownership of the real estate parcel adjoining the family home points in the direciton of a property settlement, as does the fact that petitioner's wife had an interest in a joint checking account which was not specifically dealt *118 with in the final agreement. In light of the foregoing and taking into account the fact that the $12,500 was essentially intended as a lump-sum disposition with payment postponed merely for the convenience of petitioner, we think that petitioner has failed to meet his burden of proving that the payment involved herein was not on account of a "division of capital" between the parties. Ralph Norton, 16 T.C. 1216, 1218 (1951), affd. 192 F. 2d 960 (C.A. 8, 1951); see 5 Mertens, Law of Federal Income Taxation (Zimet and Ness Rev.), sec. 31A.03. Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. The $12,500 was represented by $6,500 out of the $6,900 payment and $2,000 out of each of the three $2,400 payments.↩
3. Petitioner actually deducted $13,630.57 on his 1962 return representing payments to his former wife. Respondent disallowed only $6,900, of which petitioner conceded $400. We were not enlightened as to what the balance of the $13,630.57 covered, nor are we able to reconstruct this balance from the record before us. ↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * *
SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. * * *↩
5. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * *
(c) Principal Sum Paid in Installments. - (1) General rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. * * *↩
6. 5. So long as the covenants of the wife as herein expressed are performed the husband agrees to pay either directly to the wife or to the trustee for the wife: (a) During his life and commencing with the first day of the month following the entry of a decree nisi of divorce he will pay $400.00 a month to the said wife for her life or until her death or remarriage except that in the month following the entry of the decree of absolute divorce he will pay to the wife $6900; in the thirteenth month after decree absolute he will pay to the wife $2400; in the twenty-fifth month after decree absolute he will pay to the wife $2400; and in the thirty-seventh month after decree absolute he will pay to the wife $2400.↩