ALAN E. ASHCRAFT, JR., AND JEAN J. ASHCRAFT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59101.   Filed May 10, 1957.

*Peer Pedersen, Esq.*, for the petitioners.
*Erving Sodos, Esq.*, for the respondent.

### OPINION.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the calendar year 1951, in the amount of $1,881.92. The only question for decision is whether the respondent erred in disallowing $8,758.41 of the amount of $9,887.55 claimed as a deduction under section 23 (u) of the Internal Revenue Code of 1939.

The facts were stipulated and the stipulation is incorporated herein by this reference.

The petitioners are husband and wife and reside at Kenilworth, Illinois. Their joint return for the year 1951 was filed with the collector of internal revenue for the first district of Illinois. When the term "petitioner" is used hereinafter it will refer to petitioner Alan E. Ashcraft, Jr.

The petitioner had been previously married to Ruth T. Ashcraft from January 29, 1930, until their divorce on January 6, 1944. One child, Alan E. Ashcraft, III, was born to this marriage.

On January 3, 1944, the petitioner, as party of the second part, and his then wife, Ruth, as party of the first part, entered into a separation agreement. Therein they made provision for certain transfers of property in full settlement and adjustment of their respective property rights and claims of every kind. The agreement contained the following provisions:

FIFTH: Party of the second part hereby covenants and agrees to pay to party of the first part the sum of TWO HUNDRED TEN ($210.00) DOLLARS per month as permanent alimony and the further sum of FORTY ($40.00) DOLLARS per month for support of the minor son of the parties hereto during his minority. PROVIDED, HOWEVER, the above alimony and child support payments shall not commence until party of the first part vacates the house at 731 Forest Avenue, Evanston, Illinois.

\* \* \* \* \* \* \*

SEVENTH: Party of the second part hereby covenants and agrees within five (5) days from the date hereof to assign and deliver to party of the first part a life insurance policy, or policies, on his life, aggregating TWENTY THOUSAND DOLLARS ($20,000.00) to party of the first part. Party of the first part covenants and agrees that within five (5) days thereafter she will execute assignments of said policies to party of the second part and deliver such policies and assignments to FRANK G. MARSHALL, her attorney, to hold

such policies until the death of the party of the second part at which time he shall deliver such policies and assignments to party of the first part. PROVIDED, HOWEVER, in the event that party of the first part shall remarry or die before the death of party of the second part, the said FRANK G. MARSHALL shall deliver such policies and assignments to party of the second part. Party of the second part also covenants and agrees to pay the annual premiums on said policies and it is understood and agreed that any annuities provided for in said policies shall inure to the benefit of party of the second part.

On January 6, 1944, the Superior Court of Cook County, Illinois, entered a decree dissolving the bonds of matrimony. The decree contained the following provisions:

And it appearing to the court that the parties hereto have heretofore entered into an agreement for the settlement of all right, title and interest that either may now have or hereafter acquire in the property, both real and personal, of the other, and for the proper care and maintenance of the plaintiff and of ALAN E. ASHCRAFT, III, the minor child of the parties hereto, and the court having read said agreement and being fully advised in the premises, it is hereby ordered that the said agreement be and the same is hereby approved.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the parties hereto fulfill the obligations of said agreement and that pursuant to such agreement the defendant ALAN E. ASHCRAFT, JR., pay to the plaintiff the sum of TWO HUNDRED TEN ($210.00) DOLLARS per month as alimony and the further sum of FORTY ($40.00) DOLLARS per month for support of the minor son of the parties hereto during his minority. It is further ordered that the foregoing alimony and child support payments shall not commence until the plaintiff vacates the house at 731 Forest Avenue, Evanston, Illinois.

On December 31, 1947, the petitioner and Ruth T. Ashcraft entered into an agreement, apparently not submitted to the divorce court, modifying paragraph Seventh of their agreement of January 3, 1944, in certain respects not here material. Under such modified provision the former wife continued to have no right to the insurance proceeds unless the petitioner predeceased her and she had not remarried before his death.

On June 29, 1951, the petitioner and Ruth T. Ashcraft entered into an agreement modifying and supplementing their agreement of January 3, 1944, and their rights and duties under their divorce decree of January 6, 1944. This agreement contained the following provisions:

1. Ruth waives all right to further payment of alimony or support, pursuant to a decree of divorce entered January 6, 1944, in a cause then pending in the Superior Court of Cook County, Illinois, entitled Ruth T. Ashcraft vs. Alan E. Ashcraft, Jr., being general number 43-S 14678, and agrees that said decree of divorce may be amended in accordance with this Paragraph 1. Ruth understands that she may never thereafter apply to said Court for alimony or support.

2. Ruth waives all her right to the continuance of the insurance provided for in the separate agreement mentioned in said decree for divorce and agrees to execute all necessary papers and documents for the release to Alan of all her interest in and to the policy of insurance issued pursuant to that said separate agreement, by The Penn Mutual Life Insurance Company, in the sum of $20,000, being policy No. 2-626-738.

3. Alan will pay to Ruth $6,200.00, contemporaneously with the execution of this agreement and the further sum of $2,000.00, within 70 days.

4. Alan will provide a policy or policies of straight life insurance insuring his life in the amount of $9,500.00, and assign all his right, title and interest in and to such policy or policies to Ruth absolutely. All dividend payments on such policy or policies shall be applied in payment of premiums and the balance of such premiums shall be paid by Alan. The marriage or death of Ruth shall relieve Alan of making any further premium payments on such policy or policies.

On June 29, 1951, the Superior Court of Cook County, Illinois, issued a supplemental decree which contained the following provisions:

This day came again the parties hereto by their respective attorneys and it appearing to the Court that the said parties have entered into an agreement by which the plaintiff, for good and valuable considerations, has waived the payment of further alimony and support, and the Court having read said agreement and being fully advised in the premises doth order:

1. That the decree of divorce heretofore entered herein be and the same is hereby amended by striking therefrom all its provisions in reference to alimony and custody and support of the minor child of the said parties.

2. That defendant be and he is hereby forever relieved of all obligation to contribute to the support of or pay alimony to the plaintiff and all the provisions in said decree of divorce in reference to alimony and child support are hereby satisfied of record.

3. That the parties hereto shall have joint custody of their minor child and he shall remain, until the further order of the Court, in his present school and the defendant shall maintain and support him.

In their return for the year 1951 the petitioners claimed a deduction of $9,887.55 with the following explanation:

Alimony pursuant to divorce decree and periodic payments under written agreement incident to decree paid to former wife, Ruth T. Ashcraft.

The above amount of $9,887.55 is the sum of the following amounts which were paid by the petitioner to Ruth T. Ashcraft pursuant to his promises made in the above agreements or required by the above decrees:

| Amount paid | Obligation incurred under |
|---|---|
| $1,050.00 | Jan. 6, 1944, divorce decree [1] |
| 558.41 | Agreement of June 29, 1951 [2] |
| 79.14 | Agreement of June 29, 1951 [3] |
| 6,200.00 | Agreement of June 29, 1951 [4] |
| 2,000.00 | Agreement of June 29, 1951 [5] |

[1] Five monthly payments of $210 on each of the following dates: Jan. 22, 1951; Feb. 26, 1951; Mar. 26, 1951; Apr. 23, 1951; and May 22, 1951.

[2] Cash surrender value of life insurance policy paid on July 21, 1951, in the amount of $558.41.

[3] Premium on the life insurance policy paid on Sept. 10, 1951, in the amount of $79.14.

[4] Payment which was to have been made contemporaneously with the signing of the agreement and which was paid on Oct. 18, 1951, in the amount of $6,200.

[5] Payment which was to have been made 70 days after the signing of the agreement and which was paid on Dec. 10, 1951, in the amount of $2,000.

In determining the deficiency for the year 1951, the respondent disallowed $8,758.41 of the above-referred-to claimed deduction of $9,887.55, consisting of items 2, 4, and 5 above.

It is the petitioner's contention that the three items which the respondent disallowed, namely $558.41, representing the cash surrender value of the life insurance policy, title to which was transferred on July 21, 1951; the $6,200 paid on October 18, 1951; and the $2,000 paid on December 10, 1951, should be considered as taxable to the petitioner's ex-wife under section 22 (k) of the Internal Revenue Code of 1939,[1] and therefore deductible by the petitioner under section 23 (u) of the Internal Revenue Code of 1939.[2]

The question turns upon whether the payments in question are "periodic payments" which are taxable to the ex-wife and deductible by the petitioner, or whether they are "[i]nstallment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument," which are not taxable to the ex-wife and not deductible by the petitioner.

The petitioner would have us consider those three items as but three periodic payments in a series which includes all the prior pay-

---

[1] (k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. For the purposes of the preceding sentence, the portion of a payment of the principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be considered an installment payment for the taxable year in which it is received. (In cases where such periodic payments are attributable to property of an estate or property held in trust, see section 171 (b).)

[2] Section 23 provides that in computing net income there shall be allowed as deductions:

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

ments of $210 per month and, we gather, all subsequent payments of premiums on the insurance policy of $9,500. Since the premium payments on the insurance policy are payable by the petitioner only so long as the former wife lives and remains unmarried, the contention, as we understand it, is that there has been no principal sum representing the petitioner's liability to his ex-wife specified in the decree or instrument which would justify treating any of these payments as installment payments.

The respondent, on the other hand, contends that these were installment payments, pointing out that under the agreement of June 29, 1951, or the court's supplemental decree of the same date, or both, the petitioner was relieved of any further obligation to pay alimony and support and that he became obligated absolutely to make the two payments of $6,200 and $2,000 and to transfer to the former wife all interest in a policy of insurance on his life in the amount of $9,500 (the cash surrender value of which was $558.41). He points out that these obligations were not contingent upon the lives of either the petitioner or his former wife, upon the petitioner's financial status, or upon the former wife's remaining unmarried. He refers to the Illinois Revised Statutes, chapter 40, section 19,[3] which provides that when a decree recites that there has been an express waiver of alimony or a money or property settlement in lieu of alimony or where the court by its decree has denied alimony, it may not subsequently enter an order for alimony and maintenance of the spouse.

We have heretofore on several occasions considered the meaning of the word "periodic," and the question whether various payments provided for in a decree of divorce or a written instrument incident to a divorce may be separately considered to determine whether some are "periodic" payments and some "installment" payments.

In *Ralph Norton*, 16 T. C. 1216, 1218, affd. (C. A. 8) 192 F. 2d 960, the taxpayer agreed to pay his wife $200 per month as alimony and to pay her forthwith $5,000 "additional alimony." In holding that the $5,000 was not a periodic payment we stated:

We have studied the Congressional Committee Reports covering section 120 (a) and (g) of the Revenue Act of 1942 which first provided sections 22 (k) and 23 (u). 1942-2 C. B., pages 372, 504 and 701. We find therein no light on this subject. The word "periodic" is to be taken in its ordinary meaning

---

[3] * * * Irrespective of whether the court has or has not in its decree made an order for the payment of alimony or support, it may at any time after the entry of a decree for divorce, upon obtaining jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony and maintenance of the spouse and the care and support of the children as, from the evidence and nature of the case, shall be fit, reasonable and just, but no such order subsequent to the decree may be made in any case in which the decree recites that there has been an express waiver of alimony or a money or property settlement in lieu of alimony or where the court by its decree has denied alimony. * * *

and so considered excludes a payment not to be made at fixed intervals but in a lump sum, and the fact that the statute made particular reference to periodic payments is some reason to believe that another kind of payment, that is, an initial payment in some larger and undivided amount, was considered in a different category. We may, we think, take judicial notice that divorce settlements or decrees not uncommonly provide some considerable amount payable immediately to the wife, in addition to regular or recurring payments for current support thereafter. We consider it reasonable to believe that Congress had such a practice in mind and did not intend to make the wife taxable upon the lump sum, original, or principal payment to be made here, but that it was something in the nature of division of capital, rather than from the husband's income so as to be deductible by him. At any rate, we think Congress failed to provide that such a payment was "periodic" and that, therefore, it is not within the statute. * * *

See also *Arthur B. Baer*, 16 T. C. 1418, affirmed as to this issue (C. A. 8) 196 F. 2d 646, and *William M. Haag*, 17 T. C. 55.

In *James M. Fidler*, 20 T. C. 1081, we recognized that monthly payments of $800 required to be paid under a divorce decree consisted of two separate components of $500 and $300 each. There the petitioner was obligated to pay the $500 per month unconditionally for 53 months and was obligated to pay the additional $300 a month for the same period, depending upon his employment as a radio commentator. We there held that both the $500 payments and the $300 payments were installment payments. On appeal the decision was modified by the Court of Appeals for the Ninth Circuit, *Fidler* v. *Commissioner*, 231 F. 2d 138, but the court recognized the separateness of the two payments, holding that the $500 payments, being unconditional, constituted installment payments and hence were not deductible.

In *Lemuel Alexander Carmichael*, 14 T. C. 1356, 1362, 1366, the taxpayer was obligated to pay as alimony cash installments of a specified principal sum over a period of 9 years and to vest title to an insurance policy on his life in his wife. We there stated:

Petitioner finally contends that the provision of the property settlement agreement and the divorce decree relating to alimony are unitary and thus provision for cash installments of alimony and for the payment of premiums on the insurance policies held in escrow and delivered to his wife constituted inseparable parts of a single obligation. Consequently, in view of the indefinite total amount and indefinite duration of the premium payments on the policies delivered to Vieva Carmichael, the alimony obligation was not one for the payment of specified principal sum, but was one for periodic payments of an indefinite total amount. * * *

* * * * * * *

Petitioner cites no authority for his unitary concept of the separate alimony obligations provided in this decree and agreement incident thereto, and we can find none. Section 22 (k) of the code clearly provides that installment payments discharging a part of an obligation the principal sum of which is specified in the

decree or instrument shall not be considered periodic payments unless the principal sum is to be paid within a period extending over more than 10 years. The cash payments of $200 per month to Vieva Carmichael as alimony precisely fit this statutory definition of installment payments which shall not be considered periodic payments. To hold that such an obligation should be combined with an entirely separate and distinct alimony obligation which calls for periodic payments so that the aggregate payments under the combined obligations are periodic would clearly defeat the statutory intent. It would then be possible for a taxpayer to provide in an agreement incident to divorce for payment of a principal sum of $100,000 in cash installments of $50,000 per year for a period of 2 years and yet deduct $50,000 a year as a periodic payment under section 23 (u) so long as he was careful to insert another provision in the agreement that he would vest title to a $1,000 insurance policy on his life in his wife and pay the premiums thereon for the rest of his life. We are convinced Congress did not intend such a result when it enacted section 22 (k).

We agree with the respondent that the cash payments of $6,200 and $2,000, and the obligation to turn over the insurance policy were absolute obligations and were not dependent upon any contingencies. In our opinion they were not periodic payments but were installment payments discharging a part of an obligation, the principal sum of which was "in terms of money or property" specified in the decree or instrument, and we so hold and find as a fact. Certainly the two cash payments were specified in terms of money, and the agreement of June 29, 1951, provided for the transfer of property (the insurance policy). As in the *Carmichael* case, *supra*, any obligation of the petitioner to make continuing premium payments on the life insurance policy so long as the former wife remained alive and single does not operate to render the items here in question periodic payments within the meaning of the statute.

We have given consideration to the cases cited by the petitioner but do not find them authority for a contrary conclusion. The petitioner cites a number of cases decided by courts of appeals holding that installments of a fixed sum payable over a period of less than 10 years may nevertheless be deductible by the husband if the payment of the installments may be terminated upon a contingency such as the death or remarriage of the wife. Cases of that type are not in point here since, as pointed out, there is no such contingency as to the items in question.

There is no issue raised as to the deductibility of the insurance premium payments, the respondent having allowed the deduction of the $79.14 premium payment made by the petitioner in September 1951.

The respondent's disallowance of the items in question is approved.

*Decision will be entered for the respondent.*