*Decision will be entered for the respondent.*

MARY SCHWAB, FORMERLY MARY R. HOUSTON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROBERT E. HOUSTON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1319–63, 1550–63. Filed August 14, 1969.

*Robert E. Meldman,* for the petitioner in docket No. 1319–63.
*Leo J. Federer,* for the petitioner in docket No. 1550–63.
*Robert M. Burns* and *Robert P. Burke,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in the income taxes of the petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 1319–63 | Mary Schwab | 1959 | $27, 004. 45 |
| 1550–63 | Robert E. Houston | 1959 | 43, 474. 47 |

These cases, consolidated both for trial and opinion, involve the question of whether certain transfers of real and personal property from Robert E. Houston to Mary Schwab during the year 1959 constituted a portion of a "principal sum" payable over more than 10

years and hence taxable as periodic payments within the meaning of section 71(c)(2).[1] Certain other issues with respect to petitioner Schwab have been settled and will be reflected in the Rule 50 computation.

All of the facts are stipulated and are found accordingly.

Petitioner Mary Schwab (hereinafter referred to as Schwab) is an individual who had her legal residence in Oconomowoc, Wis., at the time of filing the petition herein. She filed an individual income tax return for the year 1959 with the district director of internal revenue, Milwaukee, Wis.

Petitioner Robert E. Houston (hereinafter referred to as Houston) is an individual who had his legal residence in Elm Grove, Wis., at the time of filing the petition herein. He filed an individual income tax return for the year 1959 with the district director of internal revenue, Milwaukee, Wis.

On September 22, 1959, the petitioners, who were husband and wife, entered into a stipulation which was subsequently incorporated into a judgment of the Circuit Court of Milwaukee County, Wis., dated October 20, 1959, which judgment decreed that Schwab was entitled to a divorce from Houston.

The stipulation provided in pertinent part:

WHEREAS the parties are living separate and apart; and, subject to the approval of the Court, it is the desire of the parties to make full and final division and distribution of the estate and property of the parties as herein stated and in lieu of permanent alimony, and to enter into the following Stipulations with the approval of their respective attorneys; Now, THEREFORE,

1. It Is Stipulated and Agreed by and between the parties, that, in event of granting of judgment for absolute divorce in accord with the prayer of plaintiff's complaint, subject to Court approval, the estate both real and personal of defendant, and so much of the estate of plaintiff as shall have been derived from defendant, shall be finally divided and distributed between the parties and title divested and transferred; that plaintiff hereby accepts the considerations hereinafter mentioned from defendant as and for full satisfaction and discharge of alimony and counsel fees and as such full and final division and distribution of the estate and property of the parties in lieu of all alimony * * *.

2. It Is So Stipulated and Agreed by and between the parties that the estate, both real and personal, of defendant and so much of the estate of plaintiff as shall have been derived from defendant shall be finally divided and distributed between the parties and title divested and transferred, in lieu of all alimony to plaintiff, by division, distribution and transfer to plaintiff in the sum of $505,-699.44 as follows, and on the following terms and conditions:

Subparagraphs 2 (a), (b), (c), and (d), of the stipulation provided that, within the month following the rendition of the judgment of absolute divorce, the parties' dwelling, valued at $40,000 for the pur-

---

[1] All references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended.

pose of the stipulation, was to vest in Schwab, $115,000 was to be paid to Schwab in cash, and all rights in certain insurance policies having a net cash surrender value of approximately $29,799.44 and an automobile, jewelry, furniture, and other personal property valued at $20,900 were to vest in Schwab.

Subparagraph 2(e) of the stipulation provided in pertinent part:

(e) $300,000 to be paid by defendant to plaintiff in the manner following: in equal annual instalments of $25,000 one year after the last day of the calendar month following rendition of such judgment, and $25,000 on such date in each year thereafter during the succeeding eleven years. * * *

The issue is whether the transfer of real and personal property valued at $205,699.44 from Houston to Schwab during the fall of 1959 represents a property settlement or an installment payment which qualifies for treatment as a periodic payment pursuant to section 71(c).[2] If periodic payment treatment is appropriate, the payments are deductible by Houston under the provisions of section 215(a) and includable in the gross income of Schwab under section 71.

Respondent, while assuming inconsistent positions with respect to the petitioners, urges on brief that we accept the position of Schwab, namely, that the 1959 transfers constituted a property settlement which is to be treated separately for tax purposes from the series of 12 periodic cash payments which began in 1960. Houston asserts that the 1959 transfers were but 1 of a series of 13 annual payments, with the result that the transfers qualify for periodic-payment treatment pursuant to section 71(c)(2). We determine that Schwab's contentions should prevail.

Since all of the facts were stipulated by the parties, the only evidence bearing on the question at hand is contained in the settlement stipulation of September 22, 1959, which was incorporated into the

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

*     *     *     *     *     *     *

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. * * *

Circuit Court's decree of October 20, 1959. Houston relies on the preliminary paragraph of section 2 of that stipulation, wherein he agreed to transfer to Schwab enumerated items with an agreed value of $505,699.44, and urges us to infer that the settlement therefore involved a unitary obligation with dissimilar payments spread over a period of 13 years.

Determination of the real substance of a divorce settlement and the tax effect of provisions respecting payment turns upon the particular facts and circumstances of each case. The fact that the parties agreed to a total consideration for the divorce settlement does not determine that each element of the settlement reflects similar motivations or that a uniform tax treatment must be accorded the entire agreement. In situations similar to that involved herein, courts have determined differing tax consequences with respect to various elements of a divorce settlement. *Ann Hairston Ryker*, 33 T.C. 924 (1960); *Alan E. Ashcraft, Jr.*, 28 T.C. 356 (1957), affd. 252 F. 2d 200 (C.A. 7, 1958); *Arthur B. Baer*, 16 T.C. 1418 (1951), affirmed on this issue 196 F. 2d 646 (C.A. 8, 1952); *Ralph Norton*, 16 T.C. 1216 (1951), affd. 192 F. 2d 960 (C.A. 8, 1951); *Lemuel Alexander Carmichael*, 14 T.C. 1356 (1950); *Renstrom* v. *United States*, 220 F. Supp. 688 (D. Neb. 1963); *Knowles* v. *United States*, 182 F. Supp. 150 (S.D. Miss. 1960), affirmed per curiam 290 F. 2d 584 (C.A. 5, 1961).

The property transferred in 1959 consisted of cash, realty, personalty, and insurance policies. The nature and amount of the assets is suggestive of a property settlement rather than the discharge of a recurrent, periodic obligation.[3] Moreover, the 1959 transfers are also distinguished from those in later years by the time of payment. The 1959 obligation required a transfer of slightly over $200,000 within 60 days of the final decree of divorce, whereas the subsequent payments, aggregating $300,000, were to be made in equal annual amounts over 12 years. This difference in treatment further supports the conclusion that the 1959 transfers were in the nature of a distribution of assets, in contradistinction to the support characteristics of the annual payments.

This view is confirmed by the language appearing in both paragraphs 1 and 2 of the settlement stipulation that "the estate both real and personal of defendant, and so much of the estate of plaintiff as shall have been derived from defendant, shall be finally divided and distributed between the parties and title divested and transferred." We cannot believe, when viewed in terms of the substantive nature

---

[3] While a portion of the cash transferred in 1959 might have been treated in the stipulation as a 13th periodic payment, such treatment was not given, and Houston has made no argument that it would be appropriate to extend periodic-payment treatment to a portion of the sum transferred.

of the transaction, that this language was of no significance. As we stated in *Ralph Norton*, 16 T.C. at 1218:

We may, we think, take judicial notice that divorce settlements or decrees not uncommonly provide some considerable amount payable immediately to the wife, in addition to regular or recurring payments for current support thereafter. We consider it reasonable to believe that Congress had such a practice in mind and did not intend to make the wife taxable upon the lump sum, original, or principal payment to be made here, but that it was something in the nature of division of capital, rather than from the husband's income so as to be deductible by him.

See also 5 Mertens, Law of Federal Income Taxation, sec. 31A.03 (Zimet & Weiss rev.).

Houston's asserted characterization of the transaction is simply an attempt to camouflage its true significance when viewed in terms of the framework set forth in the settlement stipulation. Cf. *Fidler* v. *Commissioner*, 231 F. 2d 138 (C.A. 9, 1956), modifying 20 T.C. 1081 (1953); *Alan E. Ashcraft, Jr., supra*. Indeed, there is reason to believe that Houston stood to benefit from those portions of the settlement stipulation which constituted a division of property because of the absolute finality accorded to such provisions. Compare Wis. Stat. Ann. secs. 247.26 and 247.32; *Kronforst* v. *Kronforst*, 21 Wis. 2d 54, 123 N.W. 2d 528 (1963); *Schall* v. *Schall*, 259 Wis. 412, 49 N.W. 2d 429 (1951).

We can only conclude that the 1959 payments were in the nature of a property settlement and do not qualify as one of a series of installment payments. Consequently, they may not be treated as periodic payments within the meaning of section 71(c).

*Decision will be entered under Rule 50 in docket No. 1319–63.*

*Decision will be entered for the respondent in docket No. 1550–63.*