GEORGE C. DeSMYTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Smyter v. Commissioner
Docket No. 5765-71.
United States Tax Court
T.C. Memo 1973-90; 1973 Tax Ct. Memo LEXIS 198; 32 T.C.M. (CCH) 402; T.C.M. (RIA) 73090; April 17, 1973, Filed Thomas H. Bejin, for the Petitioner. Gary F. Walker, for the respondent. FAY
MEMORANDUM *199 FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the income tax liability of petitioner for the taxable years 1966 and 1967, as follows: Year
Deficiency
1966
,625.33
1967
2,895.33
The issue is whether the petitioner is entitled to an ordinary deduction under section 215, [1] Internal Revenue Code 2 of 1954, for installment payments made to his ex-wife. FINDINGS OF FACT Some of the facts have been stipulated. They are so found and incorporated herein by this reference. Petitioner, George C. DeSmyter (hereinafter referred to as petitioner), resided in Grosse Pointe, Michigan, at the time of filing his petition herein. Petitioner filed Federal income tax returns for the taxable years 1966 and 1967 with the district director of internal revenue, Detroit, Michigan. Petitioner and his wife, Ruth DeSmyter (Ruth) were married on January 29, 1942. At the time of the marriage, Ruth had $4,500 that she had accumulated prior to the marriage. After marriage, Ruth's $4,500 in savings and her earnings from continued employment were *200 used for the parties' joint welfare and for petitioner's support until he graduated from medical school in April 1943. After petitioner graduated from medical school, Ruth continued to assist and work with him during the early years of their marriage. She worked full time as a registered nurse until February 1944. When petitioner opened his doctor's office in Detroit in 1949, she assisted him on a full-time basis until 1951. From 1951 to July 1961, Ruth continued to assist the petitioner on a part-time basis by working as a substitute for his nurse when she took vacations. Prior to 1966, Ruth sued petitioner for divorce in the Circuit Court for the County of Wayne in Detroit, Michigan. 3 The divorce proceedings were not amicable; the parties did not confer directly with each other but instead conferred through their respective counsel. On August 13, 1963, a hearing was held in the Circuit Court for the County of Wayne and the court ordered the petitioner to pay the sum of $110 per week for the support of his wife, $40 per week for the support of the petitioner's minor child, and the mortgage payment on the marital home. The petitioner was often in arrears on these payments. *201 During the divorce proceedings, the petitioner's wife was unable to work and her only source of income was the petitioner's payments. However, in the Final Report of the Friend of the Court, the petitioner's response to questions regarding support payments was "I am not willing to give my wife anything. She is well able to take care of herself." During the divorce proceedings, Ruth sought both alimony payments and an interest in an apartment building (Fontainebleu Apartments) which was the major asset outside of the couples's 4 home. [2]
Petitioner and *202 Ruth owned a one-half interest in the Fontainebleu Apartments as tenants by the entireties and the remaining one-half interest was owned by the petitioner's parents. This apartment house had been apraised at a value ranging from $165,000 to $220,000, depending on whether the appraiser had been retained by petitioner or Ruth. The apartment house was subject to a mortgage of $97,990.12. Ruth, in listing the value of the assets of the parties in an investigation by the Friend of the Court on Spetember 23, 1964, listed the value of the parties' undivided one-half interest in the Fontainebleu at $82,500. Although the $220,000 appraised value was not reflected in this report, it was taken into consideration 5 by the parties in settling the divorce proceedings. Ruth's lawyer attempted to negotiate for a one-half interest in the apartment building because of its value to her. It was a valuable piece of real estate which offered Ruth both a source of income and an opportunity for capital appreciation. The petitioner was intent on making certain that Ruth received no interest in the apartment house and even offered her cash for her interest. Ruth was advised by her attorney that *203 she would be in a better economic position if she refused any cash settlement for her interest. Finally, after evaluating the two separate appraisals, the parties agreed on a settlement in the divorce decree. All of the financial arrangements were listed under the heading "Property Settlement." The decree further stated that no alimony should be allowed to the petitioner's wife. Among the interests which passed to Ruth was a lump sum of $79,300 payable at the rate of $650 per month for 122 months. [3] This principal sum was not subject to a contingency of the death of either party, the remarriage of the wife, or a change in the economic status of either party.If the petitioner defaulted on the monthly payments, Ruth would be able to foreclose a lien that she received in the apartment building under the Judgment of Divorce. Other than this lump sum payment spread out over 122 months, the petitioner and Ruth received the following property as a result of the divorce decree: Ruth Furniture and furnishings
$3,000.00
1959 Cadillac
1,500.00
Cash (approximately)
11,350.00
Attorney fee paid
2,150.00
$18,000.00
Ex-wife also received $5,000 from proceeds of sale of marital home
5,000.00
Less liabilities assumes
-
Net property received by ex-wife
$23,000.00
Petitioner
Assets:
1/2 interest in Fontainebleu Apts.
$82,500.00
Chris Craft cruiser
6,000.00
1962 Mercedes
2,900.00
1963 Dodge
1,700.00
Medical business
500.00
Life insurance
3,994.00
Total assets
97,594.00
Liabilities assumed:
1/2 Mortgage on Fontainebleu Apts.
$48,995.06
Chattel mortgage due on Mercedes
300.00
Chattel mortgage due on Dodge
1,600.00
Debt to father on house and apt.
10,000.00
Total liabilities
$60,895.06
NET ASSETS
$36,698.94
*204 Petitioner in his return for the taxable years 1966 and 1967 claimed an alimony deduction for the payments made pursuant to the divorce decree. Respondent, in his notice of deficiency, increased petitioner's taxable income to reflect the disallowance of this claimed deduction. 7 OPINION The issue is whether petitioner's installment payments of $650 per month pursuant to a divorce decree were payments in discharge of an obligation incurred because of the marital or family relationship or whether they instead represent the settlement of marital property rights. The payments are periodic as defined by section 71(c) (2) [4] so that if they arose out of the marital or family relationship they are deemed alimony and are deductible by the husband under section 215[5] and includable in 8 the wife's income under section 71.[6] However, if those payments are made in fulfillment of a division of property related to a divorce they are capital in nature and are not includable in the wife's income under section 71. Nor are they deductible by the husband. See Enid P. Mirsky, 56 T.C. 664 (1971); Lewis B. Jackson, Jr., 54 T.C. 125 (1970), and cases cited therein. *205 *206 The determination of the real substance of a divorce settlement and the tax effect of provisions respecting payment turns upon the particular facts and circumstances of each case, not upon any labels that may have been placed on the payments by the parties or the divorce decree. See Ann Hairston Ryker, 33 T.C. 924 (1960); Houston v. Commissioner, 442 F.2d 40 (C.A. 7, 1971), affirming Mary Schwab, 52 T.C. 815 (1969); McCombs v. Commissioner, 397 F.2d 4 (C.A. 10, 1968), affirming a Memorandum Opinion of this Court; and Bardwell v. Commissioner, 318 F.2d 786 (C.A. 10, 1963), affirming 9 38 T.C. 84 (1962). The dominant factor in determining the substance of the agreement is the intent of the parties; see Phinney v. Mauk, 411 F.2d 1196 (C.A. 5, 1969); and Bernatschke v. United States, 364 F.2d 400 (Ct. Cl., 1966). The courts have looked to various other factors as aids in determining such intent. Factors held to be indicative of property settlement payments are (1) the fact that the payments are not related to the husband's income, Bernatschke, supra, at 408; (2) *207 the presence of a fixed sum, Bernatschke, supra, at 408; Bardwell, supra; and Campbell v. Lake, 220 F.2d 341 (C.A. 5, 1955); (3) the continuation of the payments without regard to the death or remarriage of the payee spouse, see McCombs v. Commissioner, supra, and cf. Bardwell, supra; and (4) the fact that the payee spouse did relinquish property interests in return for the payments. In the case at bar, all of the above indicia are present. Furthermore, based on the record as a whole, we are thoroughly convinced that the petitioner intended his periodic payments to be payments arising from a property settlement and not at all related to any obligation arising out of the marital relationship. At the time of his divorce, petitioner was intent on not making any support payments and on preserving his interest in the Fontainebleu Apartments. The fact that Ruth may have 10 received a generous settlement in lieu of her ownership rights to the apartment does not at all detract from a finding that the payments are property settlement payments. Certainly, it is not unusual to pay a premium to preserve exclusive ownership *208 of a valuable asset for one'e immediate family. Furthermore, a review of the real economics of the settlement reveals that the premium, while substantial, was not so extravagant as to deprive that transaction of any real substance. [7] The present value of Ruth's right to periodic payments discounted at 6 percent was in the neighborhood of $60,000. She also received approximately $23,000 in additional property. In exchange for this, she relinquished her claim to a portion of an apartment building which had been valued by her appraiser at $220,000 and was subject to a $97,990.12 mortgage. She relinquished a substantially valuable interest for her approximately $82,000 settlement. *209 Petitioner has done an excellent job in his presentation and on brief; however, all of petitioner's authorities, Riddell v. Guggenheim, 281 F.2d 836 (C.A. 9, 1960); Thomas E. 11 Hogg, 13 T.C. 361 (1949); Wilma Thompson, 50 T.C. 522 (1968); Hazel Porter, T.C. Memo. 1966-79, affd. 388 F.2d 670 (C.A. 6, 1968); and Julia Nathan, 19 T.C. 865 (1953), are distinguishable on their facts. In all of these cases, there is either no finding at all, or no conclusive finding, that the wife gave up an undisputed property interests in exchange for the payments. Furthermore, petitioner's contention that the payment of temporary alimony before the divorce precludes the judgment of divorce from being characterized as a property settlement is also without merit. See Ellert v. Commissioner, 311 F.2d 707 (C.A. 6, 1962), affirming a Memorandum Opinion of this Court. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954. ↩
2. Other than the apartment house and the mortgage to which it was subject, the remaining assets and liabilities of petitioner and Ruth as of December 20, 1963, consisted of: ↩ Assets Furniture and furnishings
$3,000.00
Chris Craft cruiser
6,000.00
1959 Cadillac
1,500.00
1962Mercedes
2,900.00
1963 Dodge
1,700.00
Medical business
500.00
Life insurance
3,994.00
Proceeds of sale of marital home
19,650.90
$39,244.90
Liabilities
Chattel mortgage due on Mercedes
$300.00
Chattel mortgage due on Dodge
1,600.00
Debt to father - house and apartment building
10,000.00
$11,900.00
3. At a 6 percent discount rate, which is a very favorable rate for this type of security, the present value of such sum at the time of the decree would be $59,257.00. 6 ↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (c) Principal Sum Paid in Installments. - * * * (2) Where period for payment is more than 10 years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. ↩
5. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. ↩
6. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
7. Under Michigan law, a property settlement is not required to set forth an equal division of property. In dividing between parties to a divorce real estate held by the entireties [The] court [is] not required to divide the property equally between the parties, but may make such division between them as he shall deem equitable and just. [Montgomery v. Montgomery, 221 Mich. 31, 190 N.W. 687 (1922)]
See also Lukshaitis v. Lukshaitis, 314 Mich. 426, 22 N.W. 2d 825↩ (1946).