JOHN I. BENSON AND ELEANOR M. BENSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Benson v. Commissioner
Docket No. 25077-81.
United States Tax Court
T.C. Memo 1983-679; 1983 Tax Ct. Memo LEXIS 107; 47 T.C.M. (CCH) 294; T.C.M. (RIA) 83679; November 14, 1983. Louis Ginberg, for the petitioners. Warren P. Simonsen, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge:* Respondent determined a deficiency of $25,328.47 in petitioners' Federal income tax for 1975. *108 At issue is whether the value of an interest in property transferred to petitioner Eleanor M. Benson to satisfy unpaid obligations owed to her under a property settlement agreement and a divorce decree is taxable income in 1975 under sections 71 [1] or 61. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts are incorporated herein by this reference. Insofar as objections were not made or were overruled regarding certain exhibits, the exhibits are incorporated herein by reference. [3]
*109 At the time they filed their petition, petitioners resided at Burtonsville, Maryland. [4] They timely filed their joint Federal income tax return for 1975 with the Philadelphia Service Center, Internal Revenue Service. Petitioner Eleanor M. Benson (hereinafter sometimes referred to as Eleanor or petitioner) married James A. Travis (hereinafter referred to as James) on January 16, 1944. Eleanor and James had seven children during their marriage. During the course of their marriage, petitioner and James acquired commercial property at 2123 Twining Court, N.W., Washington, D.C. (hereinafter referred to as the Twining Court property). The Twining Court property was held by them as tenants by the entirety. On September 1, 1960, Eleanor and James separated and on May 17, 1961, they entered into a "Property Settlement Agreement" (hereinafter agreement) in the District of Columbia. Although entitled "Property Settlement Agreement," the agreement also provided for Eleanor's custody of the seven minor children. Additionally, the agreement provided in pertinent part: *110 FOURTH: All * * * real, personal or mixed [property] * * * held by the Husband or the Wife, shall be the separate property of either of them in whose name such property now stands[.] * * * FIFTH: All property * * * in which the parties have a joint interest shall be divided between them as follows: (1) The Husband shall transfer and convey his interest in * * * Lots #5 and 6 in said subdivision; including the premises and structures thereon, and located at 15212 Burmingham Drive, Laurel, Maryland, which is now owned by the parties hereto as tenants by the entireties, to the Wife * * * it being understood and agreed that the Wife shall take said title to the premises subject to a first deed of trust, securing the balance of a purchase money note thereon in the approximate sum of $12,330.36, and shall assume and pay the same. * * * (2) The Wife shall also have and be the owner of all the furniture and household furnishings now located at 15212 Burmingham Drive, Laureal [sic], Maryland[.] * * * (3) The Husband shall assign and transfer to the Wife all of his right title and interest in and to that certain Pontiac Convertible which is now in the possession of the *111 Wife and the Wife agrees to assume and pay all liens and encumberances [sic] against the same. (4) The Husband shall assign and transfer to the Wife all of his right title and interest in and to Policy #842-52-87 on the Life of the Husband in the principal sum of $50,000 * * * it being understood and agreed however that the Wife shall be responsible for the continuance of said policy in force and effect and for payment of all premiums. (5) The Wife shall transfer and assign to the Husband all of her right title and interest in and to 5 shares of the $1.00 par value common stock of Electrical Equipment Company. (6) The parties agree that the shares of the $1.00 par value common stock of the Twining Court Corporation issued to them jointly shall be owned and retained by them as tenants by the entirety. They further agree that the real estate * * * located at 2123 Twining Court, Northwest, Washington, D.C., shall likewise be owned and retained by the parties as tenants by the entireties. (7) The Husband and Wife agree that in the event the marriage between them is hereafter dissolved by divorce, that they shall continue to own and retain the said * * * stock and said real *112 estate * * * as tenants by the entireties[.] * * * SIXTH: The Wife hereby waives, releases and bars herself of all right of dower in and to any and all real property or interest therein, now owned or that may be hereafter acquired by the said Husband. * * * SEVENTH: The Husband hereby releases * * * all right that he may have to curtesy * * *. * * * TENTH: The provisions for division of property between Husband and Wife hereinbefore set forth, are designed to provide the Wife with an independent income so long as she may live, regardless of divorce or remarriage, and to permit her to meet the obligation, assumed by her under the provisions of this agreement, to support, maintain and educate the minor children of the parties. For the purposes of guaranteeing to the Wife an income of at least $215.00 per week during the minority of the children of the parties hereto, it is further agreed as follows: (1) The Husband shall manage the real estate and securities held in tenancy by the entireties by Husband and Wife, and shall collect the net income, retaining for his own use all of the income from the securities, and distributing one-half (1/2) of the net income *113 from the real estate held by the entireties to the Husband and one-half (1/2) thereof to the Wife[.] * * * (2) Commencing as of Saturday, May 6, 1961, and continuing for twenty-three (23) years from [that] date, the Husband shall pay to the Wife the sum of Two Hundred Fifteen ($215.00) Dollars per week. Such weekly payments shall be credited to the Wife's share of the net income received or receivable from the real property, and regardless of the amount of net income received or receivable. * * * (3) After twenty-three years from May 6, 1961, the Husband shall no longer have any obligation to pay to the Wife more than one-half of the net income from the real property * * * However, the Husband shall continue to manage the real estate and securities * * * and distribute one-half of the net income from the real property to the Wife * * * The Husband shall, however, continue to retain all of the net income from the securities. * * * (4) The power of the Husband to manage the real estate and securities * * * shall extend to the power to vote any securities so held * * * In the event of an agreed upon sale of the real property * * * the net proceeds thereof shall be divided *114 equally * * * [and] and Husband shall no longer have any obligation to support and maintain the Wife, and the Wife shall accept one-half of the net proceeds of the sale of said real estate in full discharge of all obligations of the Husband for support and maintenance; her obligation to support and maintain and educate the minor children of the parties to continue. * * * The agreement provided that no alimony or maintenance fees would be sought other than stated above, that the agreement was to remain "in full force and effect" on the divorce of the parties, and that its provisions were not to be merged into any court judgment or decree. The agreement was not incorporated in the final divorce decree. On August 14, 1962, petitioner and James were divorced by a Decree of Divorce issued by the Circuit Court for Montgomery County, Maryland. The Decree did not mention the property settlement agreement, but ordered James to pay Eleanor "the sum of $215.00 per week as alimony * * * and as maintenance and support for the children." These $215.00 weekly payments were not intended to be either a gift or a loan from James to Eleanor. Eleanor married John I. Benson in 1967. James did *115 not fulfill the "support" obligations imposed by the property settlement agreement. [5] In December 1974 he was $73,456 in arrears on the "support" payments. From 1964 to 1971, petitioner filed four actions and obtained four money judgments against James in the Family Division of the Superior Court of the District of Columbia. These judgments were not satisfied. A fifth action was filed in 1973, whereby petitioner sought another money judgment for arrearages and an award of property and relief. On February 13, 1975, the Superior Court, in its Findings and Judgment, awarded Eleanor a money judgment and ordered James to transfer to Eleanor his rights and interests in the Twining Court property on or before March 15, 1975. The order also stated that: As of the date that all of Defendant's rights and interests in the aforesaid property are transferred to Plaintiff, Defendant's *116 outstanding obligations to Plaintiff in the amount of $73,456.31, and any further sums which may have accrued under the property settlement agreement from December 6, 1974 to the date of transfer, are fully satisfied and Defendant's obligation under the settlement agreement to pay $215 per week or one-half of the rental income from the property is terminated[.] The Superior Court found the value of the Twining Court property to be between $110,000 and $150,000 and that the property was subject to an outstanding deed of trust with a balance of $9,434.75 as of December 26, 1974. The Superior Court found that the value of the property was $123,000. On June 9, 1975, James executed and delivered to the trial judge a quit-claim deed to the Twining Court property in Eleanor's favor. The deed contained a "savings clause," providing that the property was released to Eleanor unless the decision of the Superior Court was reversed or modified. Both petitioner and James appealed the decision of the Superior Court. That decision, however, was upheld by the District of Columbia Court of Appeals in a decision dated July 14, 1976. [6] In its opinion, the court considered the authority *117 of the trial court to convey James' interest in the Twining Court property to Eleanor. [7] In affirming the decision of the lower court, the Court of Appeals stated: The statute, which permitted the parties in this case to preserve the preferential incidents of the tenancy after the divorce was not intended to shelter the husband from enforcement of his support obligations under the agreement. Moreover, the property settlement agreement expressly provides that the property would continue to be held by the parties as tenants by the entirety, in order to help furnish support as agreed. The property, subject to an outstanding deed of trust in the balance of $9,434.75, was appraised at between $110,000 and $150,000. The husband was in default of support payments in the sum of $73,456.31, which represented more than his interest in the property. As a result, we see no valid reason preventing the trial court from awarding the husband's interest in the property to the wife as compensation for the husband's failure to fulfill his support obligations. [Travis v. Benson, 360 A.2d at 510.] The Superior Court released the deed to the Twining Court property to the petitioner *118 by order dated October 21, 1976. On their Federal tax return for 1975, petitioners reported the net rental income received from the Twining Court property, but did not report the receipt of the one-half interest in the property attributable to the transfer of James' interest to Eleanor by quit-claim deed. Respondent determined that the fair market value of the Twining Court property was $123,000. In calculating the value of the interest transferred to petitioner, respondent took into account the balance of the mortgage remaining on the property in the amount of $9,434.75. Thus, respondent determined that the value of the interest transferred to Eleanor was $56,782.63. OPINION Petitioner argues that the transfer to her of James' interest in the Twining Court property is not taxable under section *119 71. She contends that the transfer was not made as a result of the marital relationship because it was made to discharge a debt owed to her under a property settlement agreement. Petitioner also maintains that the February 13, 1975, Superior Court order was an adjudication of property rights and therefore the transfer was a property settlement. Finally, petitioner argues that if the transfer of James' interest in the Twining Court property is characterized as alimony, the amount taxable should be limited either to 10 percent of the principal sum under section 71(c)(2), or to the percentage of the award attributable to alimony arrearages. Respondent contends that the underlying obligation giving rise to the arrearages in this case was an alimony obligation. He argues that the transfer is taxable because under the case law, when a lump-sum payment is made to satisfy arrearages, it retains the character of the payments for which it is substituted. Respondent maintains that no allocation is called for under the present facts and contends that the 10 percent limitation rules are inapplicable because they apply to future payments and not to arrearage awards. Alternatively, respondent *120 asserts that if the value of the Twining Court property is not taxable to petitioner as alimony, it should be characterized as rental income, taxable as ordinary income under section 61. Section 71(a)(1) and (2) provides that periodic payments made under a decree of divorce or separate maintenance or under a written separation agreement, and imposed because of the marital or family relationship, are includable in the income of the recipient. [8] The requirement that payments be made in discharge of a legal obligation imposed "because of the marital or family relationship" has been interpreted to require that the payments be for support, rather than a property settlement. Beard v. Commissioner,77 T.C. 1275, 1283 (1981); Warnack v. Commissioner,71 T.C. 541 (1979); Bishop v. Commissioner,55 T.C. 720 (1971); Secs. 1.71-1(b)(4) and 1.71-1(d)(3)(i)(b), Income Tax Regs.
*121 Section 71(c) provides that installment payments which discharge an obligation to pay a principal sum, specified in a decree, instrument or agreement, and payable or paid over a longer than 10-year period are treated as periodic payments for the purposes of section 71(a), but only to the extent of 10 percent of the principal sum in any one taxable year. See Sec. 1.71-1(d)(2), Income Tax Regs.
Because the District of Columbia courts awarded petitioner an interest in property, she attempts to characterize the transaction as a property settlement. In determining how an arrearage award will be taxed, however, this Court has consistently looked at the obligation giving rise to the arrearage aware, not to the present nature of the award. See Olster v. Commissioner,79 T.C. 456, 462 (1982), on appeal to 11th Cir., 10-17-83; Davis v. Commissioner,41 T.C. 815 (1964). If an alimony obligation were satisfied by the award, then the award must be further scrutinized. When a lump-sum payment is made to satisfy back alimony, then the sum is treated taxwise as alimony. Olster v. Commissioner,79 T.C. at 462; Davis v. Commissioner,41 T.C. at 820. *122 If made in consideration for the release of an obligation to make future alimony payments, then the payment is not taxable under section 71(a) and is treated as a lump-sum payment. See Commissioner v. Senter,242 F.2d 400, 403 (4th Cir. 1957), affg. 25 T.C. 1204 (1956); Olster v. Commissioner,supra.
Thus, the decisive question here is whether the obligation of James to pay petitioner the weekly sum of $215 was created by a property settlement or was a legal obligation arising out of the marital relationship. Respondent, in making an argument for the characterization of the obligation to pay as alimony, points to the decisions of the District of Columbia Court of Appeals which refer to James' "support obligations." See, e.g., Travis v. Benson,supra. It is well settled, however, that the determination of whether payments are in the nature of support or part of a property settlement does not turn on the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement. Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); *123 Mirsky v. Commissioner,56 T.C. 664, 675 (1971); Thompson v. Commissioner,50 T.C. 522, 525 (1968). Furthermore, the issue is a factual one and requires an examination of all surrounding facts and circumstances. [9]Beard v. Commissioner,77 T.C. at 1284 and cases cited therein; Wright v. Commissioner,62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976). After an examination of the facts herein, we think that the obligation underlying the arrearage award must be characterized as one arising from a property settlement. The intent of the parties to an agreement can indicate that payments should be characterized as a property settlement. Porter v. Commissioner,388 F.2d 670, 671 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; Wright v. Commissioner,supra;Schwab v. Commissioner,52 T.C. 815 (1969), affd. sub nom Houston v. Commissioner,442 F.2d 40 (7th Cir. 1971). *124 In the present case the parties to the agreement manifested an intent that the $215 weekly payments be a property settlement by making the payments an integral part of the division of the Twining Court real estate and securities. There is no evidence showing that Eleanor's need was taken into account in fixing the $215 payment amount. See McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court. Another factor indicative of property settlement, and evidenced herein, is the surrender of valuable property rights in exchange for payments. Mann v. Commissioner,74 T.C. 1249, 1259-1262 (1980); Gammill v. Commissioner,73 T.C. 921, 928-929 (1980), affd. 710 F.2d 607 (10th Cir. 1982); Warnack v. Commissioner,71 T.C. at 550-551. By the terms of their agreement, the parties agreed that Eleanor would give up her rights to the management of the real estate and all rights to vote and to collect interest from the securities. The fact that the payments were fixed in amount and not subject to change in the event of Eleanor's remarriage further supports our finding that *125 they are properly characterized as property settlement payments. See McCombs v. Commissioner,supra;Beard v. Commissioner,77 T.C. at 1285; Widmer v. Commissioner,75 T.C. 405, 409 (1980); Land v. Commissioner,61 T.C. 675, 683 (1974); Bishop v. Commissioner,supra. The agreement provided for fixed payments of $215 per week for twenty-three years. The amount would not change despite fluctuations in James' income or Eleanor's needs and was due without regard to the amount of net income, if any, earned from the Twining Court property. Furthermore, although the agreement states that the payments are for the support of the minor children, there are no provisions decreasing payments as each child attains majority. See Widmer v. Commissioner,supra.Eleanor's remarriage did not affect her right to the payments. The payments were subject to a contingency in the sense that they would stop on the sale of the Twining Court property. In the event of a sale, the net proceeds were to be divided equally and this amount would fully discharge James' obligation to keep up the payments *126 under the agreement. The structure of this provision strongly indicates that a property settlement was intended. Cf. Land v. Commissioner,supra.
The fact that payments are secured also evidences a property settlement. Widmer v. Commissioner,75 T.C. at 409; see Gammill v. Commissioner,73 T.C. at 929. In its arrearage award judgment, the District of Columbia court used the Twining Court property and not any other of James' assets to satisfy Eleanor's claim under the contract. We think this indicates that the $215 payments were secured by the property. On the award of the property to Eleanor, her rights to future payments under the contract were extinguished, further evidencing the "property settlement aura" of the payment obligation. As respondent argues, the main factor indicating that the agreement provided for alimony and not for a property settlement is that no other provision for Eleanor's support is made in the agreement. See Schottenstein v. Commissioner,75 T.C. 451 (1980). Respondent presents another side of this argument as well, namely, that other provisions in the agreement do provide for *127 property division. Respondent also contends that both the petitioner and the District of Columbia Court of Appeals described the amounts owed as support or alimony obligations. We disagree, however, with the contention that these factors control the characterization of the payments. First, the other property provisions in the agreement disposed of property owned separately by Eleanor and James, the marital residence, and its contents. We do not think it unusual that the agreement dealt with the Twining Court property separately. Second, with respect to the alimony-like terms used in the long litigation history of the Twining Court property, we again emphasize that labels used do not necessarily determine the nature of the obligation created by the original agreement. See Hesse v. Commissioner,supra.
After considering all the facts and circumstances present in this case, and after weighing the arguments set forth by both parties, we conclude that the underlying obligation is best characterized as one arising from a property settlement. Accordingly, the arrearage award and transfer of James' interest in the property to Eleanor do not result in an event *128 taxable to petitioner under section 71. See Davis v. Commissioner,supra.Because we have determined that the arrearage award is treated for tax purposes as a property settlement, we see no merit to respondent's argument that the award should be treated as ordinary income under section 61. It is well settled that payments under a property settlement are capital in nature and not taxable to the recipient. See McCombs v. Commissioner,supra;Beard v. Commissioner,supra;Gammill v. Commissioner,supra;Wright v. Commissioner,supra;Mirsky v. Commissioner,supra.
To reflect uncontested adjustments contained in the notice of deficiency, Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Norman O. Tietjens, who died on September 2, 1983. By order dated October 13, 1983, it was reassigned to Chief Judge Howard A. Dawson, Jr.↩ for disposition. 1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue, unless otherwise stated. ↩
2. In their petition the petitioners also made a claim for attorneys' fees under the Equal Access to Justice Act. This matter was not raised at trial or on brief, and we consider it abandoned.↩
3. After examining the record herein, we sustain respondent's objections on the grounds of relevance, hearsay, and incompleteness to our consideration of exhibits 20, 28, 32 and 33. All reservations and objections concerning other exhibits set forth by the petitioners or respondent are overruled.↩
4. John I. Benson is a party to this case solely because he filed a joint return with Eleanor M. Benson.↩
5. Although the parties have stipulated that James did not fulfill the obligations imposed under the property settlement agreement and the divorce decree, it is clear that the arrearage award giving rise to the present case was made only to satisfy obligations under the property settlement agreement.↩
6. Travis v. Benson,360 A.2d 506↩ (D.C. 1976). 7. In considering this issue, that Court determined that the laws of the District of Columbia permitted this tenancy by the entirety despite the entry of a final divorce decree, but did not prevent the Superior Court from ending the tenancy and awarding James' interest to Eleanor. 360 A.2d at 509-510↩.
8. Sec. 71(a) provides, in part: (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.↩
9. But cf. Beard v. Commissioner,77 T.C. 1275, at 1284↩ (factual analysis fraught with pitfalls and Congressional reform needed in this area).