James M. FIDLER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14204.

United States Court of Appeals, Ninth Circuit.

Jan. 30, 1956.

---

Zagon, Aaron & Sandler, Raymond C. Sandler, Nelson Rosen, W. I. Gilbert, Los Angeles, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Maxley C. Featherstone, Ellis N. Slack, Hilbert P. Zarky, Davis W. Morton, Jr., Sp. Assts. to Atty. Gen., Daniel A. Taylor, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent.

Before FEE and CHAMBERS, Circuit Judges, and LING, District Judge.

JAMES ALGER FEE, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court holding that monthly payments made by petitioner to his former wife from April 1, 1944, to December 31, 1946, did not constitute periodic payments within the provisions of § 22 (k) of the Internal Revenue Code, 26 U. S.C.A. § 22(k) and therefore were not deductible by petitioner under the terms of § 23(u).

On November 16, 1944, an amended decree of divorce was entered in favor of Ruth Law Fidler against James M. Fidler, who is here petitioner. The decree was in lieu of one rendered March 20, 1944, after trial of the divorce case

in the District Court of the State of Nevada.

The amended decree [1] contains the provision:

"It is Further Ordered, Adjudged and Decreed, that defendant shall pay to plaintiff in accordance with the terms of said Settlement agreement the sum of Eight Hundred ($800.00) Dollars per month commencing forthwith and continuing for a period of four years and five months, the last monthly payment becoming due and payable on August 1, 1948, providing, however, that should defendant, at any time before August 1, 1948, not have a radio contract under the terms of which he received a monthly sum equal to the monthly sum he is now receiving under his present radio contract, monthly payments to the extent of the sum of Three Hundred ($300.00) Dollars of said sum of Eight Hundred ($800.00) Dollars per month, shall be reduced in proportion to the amount of the reduction of his present radio contract and should defendant have no radio contract at all, between the date hereof and said August 1, 1948, then monthly payments to the extent of the sum of Three Hundred ($300.-00) Dollars per month of said sum of Eight Hundred ($800.00) Dollars per month, shall be waived and shall not be made to plaintiff by defendant, and defendant shall not be required at any future time to pay to plaintiff the balance of any reduced, or waived, payments hereunder."

Two other clauses in the decree are of note in connection with this petition:

"It Is Further Ordered, Adjudged and Decreed that that certain Settlement Agreement entered into between the parties, dated February 4, 1944, be and the same is hereby confirmed, ratified, approved and adopted as a part of this Decree."

"It Is Further Ordered, Adjudged and Decreed, that all executory provisions of said Settlement Agreement which are not incorporated in this Decree in a plenary manner, are hereby declared to be binding on the respective parties hereto, and each of said parties is hereby ordered to do and perform all acts and obligations required to be done or performed by said executory provisions of said Settlement Agreement."

Pertinent clauses of the "Settlement Agreement" are set forth in the footnotes.[2]

1. The amended decree of divorce was dated March 20, 1944, which was the date of the first decree. However, the amended decree was filed November 17, 1944. It was definitive of the rights of the parties. It will hereinafter be referred to as the "decree," while the former decree will be called the "original decree."

2. The final agreement contains pertinent clauses as follows:

"Seventh: In addition to the foregoing, and on account of full and final payment of maintenance and support, alimony and alimony pendente lite to Second Party, and counsel fees and costs in any pending or future action between the parties hereto, First Party does hereby redeliver to Second Party, and Second Party will retain, those two (2) certain promissory notes, being the same notes described in Paragraph First of Amendment to Agreement of August 20, 1943 (Exhibit B), in words and figures as follows, to wit:

"'Los Angeles, California,
"'August 20, 1943.
"'(A) $18,000.00
"'At the time stated after date, for value received, I promise to pay to Roberta L. Fidler, or order, at Los Angeles, California, the sum of Eighteen Thousand ($18,000.00) Dollars, without interest. Principal payable in lawful money of the United States. This note is payable in installments of Five Hundred ($500.00) Dollars each month, payable upon the first day of each and every calendar month subsequent to the date hereof, any default in the payment of any installment when due shall cause the whole of said note to become immediately due and payable at the option of the holder hereof. Should suit be commenced to enforce the payment of this note, I promise to pay such additional sum as the Court

may adjudge reasonable as Attorney's fees in said suit. Demand, presentment for payment, protest and notice of protest are hereby waived.

"'/s/    James M. Fidler,
"    '4362 N. Clybourne Avenue,
"    'Burbank, California.'
"    'Los Angeles, California,
"    'October 21, 1943.

"'(B) $12,000.00

"'At the time stated after date, for value received, I promise to pay to Roberta L. Fidler, only, at Los Angeles, California, the sum of Twelve Thousand ($12,000.00) Dollars, without interest. Principal payable in lawful money of the United States. This note is payable in installments of Five Hundred ($500.00) Dollars each month, payable upon the first day of each and every calendar month subsequent to the first day of September, 1946, and any default in the payment of any installment when due shall cause the whole note to become immediately due and payable at the option of said Roberta L. Fidler. Should suit be commenced to enforce the payment of this note, I agree to pay such additional sum as the Court may adjudge reasonable as attorney's fees in said suit. Demand, presentment for payment, protest and notice of protest are hereby waived.

"'/s/    James M. Fidler,
"    '4362 Clybourne Avenue,
"    'Burbank, California.'

"In addition to the foregoing and in full and final payment of maintenance and support, alimony and alimony pendente lite to Second Party, and counsel fees and costs in any pending or future action between the parties hereto, First Party will, upon the execution of the within instrument, make, execute and deliver unto Second Party one (1) promissory note, in words and figures as follows, to wit:

"    'Los Angeles, California,
"    'February 4, 1944.

"    '$16,200.00

"'At the time stated after date, for value received, I promise to pay to Roberta L. Fidler, only, at Los Angeles, California, the sum of Sixteen Thousand, Two Hundred ($16,200.00) Dollars, without interest. Principal payable in lawful money of the United States. This note is payable in installments of Three Hundred ($300.00) Dollars each month, payable upon the first day of each and every calendar month subsequent to the first day of March, 1944, and any default in the payment of any installment when due shall cause the whole note to become immediately due and payable at the option of said Roberta L. Fidler. Should

suit be commenced to enforce the payment of this note, I agree to pay such additional sum as the Court may adjudge reasonable as attorney's fees in said suit. Demand, presentment for payment, protest and notice of protest are hereby waived.

"'This promissory note is given by the undersigned to the payee in accordance with an Agreement executed by and between the parties this date, on account of the support and maintenance of the payee. Should payor, at any time during the term hereof, not have a radio contract under the terms of which he receives a monthly sum equal to the monthly sum he is now receiving under his present radio contract, the monthly installments falling due hereunder during said periods shall be reduced in proportion to the amount of the reduction of his present radio contract, and should payor have no radio contract at all, then all monthly installments falling due hereunder during said period, shall be waived by payee, and payor shall not be required at any future time to pay the balance of any reduced, or waived payments, hereunder.

"'/s/    James M. Fidler,
"    '4362 Clybourne Avenue,
"    'Burbank, California.'

"That Second Party accepts said three (3) promissory notes, for her support and maintenance and not in lieu of property rights, upon the following conditions:

"(a) In lieu of other provision for the support and maintenance of Second Party during her natural life;

"(b) In full payment, discharge and satisfaction of all obligations or any thereof, on the part of First Party to maintain or support Second Party during her natural life;

"(c) In full payment, discharge and satisfaction of counsel fees and costs in any pending or future action between the parties hereto, other than an action on said or any of said promissory notes.

"Eighth:    That the installment payments provided in the three (3) promissory notes hereinabove set forth, being taxable to her as income, Second Party will, from and after the date hereof, file such income tax returns and/or declarations, both Federal and State, as are required by law, and will include therein all such support and maintenance payments received by her, and will pay all taxes shown to be due and payable under such returns and/or declarations.

"Should any of the monthly installments provided for in the said $16,200.00 promissory note, last above described, be reduced or waived and the payor not be required to make same. First Party will

The lumping of the two payments of $300 per month and $500 per month, which, as the context of the present decree shows, are entirely separate and distinct in purpose and character, in a formal aggregate of $800 per month cannot avail to transmute the essentials. There was a manifest attempt to camouflage the design, but the history of the transaction makes the matter clear. The draftsman of the decree attempted to make it appear that the $800 monthly payment was subject to a contingency as to amount and therefore to be construed as periodic. But the context itself shows that there were the contingent payments up to $300 which were periodic and $500 payments which constituted installments on a fixed amount.

By the settlement agreement, the amended decree and also the "promissory note" for $16,200, the monthly amounts not to exceed $300 were contingent, uncertain and not to be paid at all unless petitioner had a radio contract during the particular month. The decree itself makes this express provision. The payments of $300, more or less, were typically periodic since each might or might not be made. Even though a sum of $16,200 was referred to in the agreement and transferred to the decree by reference, the provisos of limitation in all the documents render its fixity fallacious. The "note" for the aggregate which might be paid in the event the contingency was favorable each month is plainly not a "negotiable instrument." The circumstance adds immeasurably to the feeling that no fixed sum was in contemplation as to this obligation to meet the monthly payments to the extent of $300. Especially is this true since the promissory notes for $18,000, which was payable in installments of $500 per month under the decree, was a negotiable instrument in strict form and would have been payable absolutely in the hands of a bona fide holder for value.

In this phase of the controversy, the answer is patent. This Court has gone much further than it is necessary to go here in Myers v. Commissioner of Internal Revenue, 9 Cir., 212 F.2d 448. In Davidson v. Commissioner, 9 Cir., 219 F.2d 147, the general principle has again been accepted. The contingent basis for these payments makes this case clear. The Tax Court erred in determining that such sums did not constitute "periodic payments" within the provisions of § 22 (k) of the Internal Revenue Code.

■ The discussion above indicates that this Court is unable to treat the $800 as a lump sum installment payment. Neither is this Court able to treat the $800 as a lump sum subject as a whole to a contingency which only affected the severable periodic payments. The context of the decree and the documents incorporated by reference show that there were distinct payments of the set sum of $500 and another amount which, if due at all in any particular month, varied periodically but were never over $300. The Tax Court clearly recognized this division and was therefore correct in its conclusion "that to the extent of $500.00 a month petitioner's payments are 'installment payments' and therefore not deductible."

In the original settlement agreement, a fixed sum of $18,000 was set up to be paid in monthly installments of $500 commencing on the first day of the month subsequent to August 20, 1943. Also, a form of promissory note for $18,000 was therein outlined. It was expressly provided that such an instrument was

give to Second Party, not for her support and maintenance, but as an absolute gift without condition, sufficient moneys to enable Second Party to pay her income taxes, both Federal and State, when due, on support and maintenance payments received from First Party, but not on income received by Second Party in excess thereof, without resort to the support and main-tenance payments provided for in the two other promissory notes, above described, it being the intention of the parties hereto that Second Party will, during any period that the payments under said promissory note last above described are reduced or waived, have a net minimum sum of $500.00 per month for her support and maintenance."

to be given to Ruth Fidler upon the execution of the contract. Petitioner accordingly delivered to his wife a note in this form for the sum so established with the installment payments as above noted to commence on the date agreed. This instrument, in accordance with the contract, carried provision for acceleration in case of default on any installment and contained a provision for payment of attorney fees in case action were necessary. It was fully negotiable.[3]

Ruth Fidler has remained in possession of this particular note since its delivery. The principal sum of $18,000 was made definite in the original agreement and has been reaffirmed in every "instrument," promissory note and contract and by every "decree" since. The fixed monthly installments of $500 have remained likewise.

The amount of $12,000, payable in installments of $500 from September 1, 1946, was also an established principal sum. It is set up without contingency in the agreement of February 4, 1944, which required that the fixed sum be evidenced by a note, which was delivered.[4]

It has been specifically called to our attention that the note for $12,000 was not negotiable in that the word "only" was included after the name of the payee. However, the intention to create an obligation to pay this fixed sum at all events is uncontrovertible. It is also convincing that the retention of this word after the contingency clause was stricken was an attempt to give color to an escape from tax liability. The whole situation was handled with meticulous care and highly skilled legal draftsmanship. The provision that Fidler should pay the federal tax imposed upon his former wife in the event the contingent income was not payable increases the suspicion of probable intention to escape payments by Fidler of higher bracket taxes. It certainly is conclusive of the intention of the parties that these specified total sums should be paid absolutely. In any event, the Tax Court was correct in viewing these payments as fixed amounts. While the payments on the note for $12,000 only affect the liability from September 1 to December 31, 1946, and thus only a minor part of the tax, the same rationale controls all.

The decree brackets these two fixed sums of $18,000 and $12,000 into a series of monthly payments of $500 each, which were to accomplish liquidation of both before September 1, 1948.[5] While this document does not set out these sums in figures upon its face, nevertheless, by reference to the contract and the promissory notes, these principal amounts and the installments are highlighted and illuminated. The first payment on the fixed sum of $18,000 was to be made September 1, 1943. The first decree was dated March 20, 1944. The following

3. The agreement of February 4, 1944, contained the following provision:
   "Twentieth: Nothing in this Agreement shall be construed as prohibiting Second Party from legally proceeding against any property of the First Party, not exempt from execution, for the purpose of enforcing the terms of the aforesaid promissory notes, or any of them."

4. The original agreement of August 20, 1943, set out a form of promissory note for $12,000 which contained the following provision:
   "This promissory note is given by the undersigned to the payee in accordance with an Agreement executed by and between the parties this date, for the support and maintenance of the payee. This note shall become absolutely void and of no effect upon any remarriage of the payee and whether or not such remarriage shall be valid."
   At the insistence of Ruth Fidler, this proviso, which might have rendered the payments contingent, was stricken out by the amendment to the agreement, which was executed October 21, 1943, and so carried into the final contract of February 4, 1944.

5. It was expressly agreed that the payments had been made when due upon the $18,000 and the $12,000 from the date of the original contract to the date of the amended contract of February 4, 1944. The decree simply provided for continuation thereof. It is stipulated all payments of $800 per month had been made to December 31, 1946.

144

month, after the last payment on the $18,000, the first installment on the $12,000 became due. Both fixed sums, according to the decree, were to be fully liquidated on August 1, 1948.

The Court assumes Congress had some intention in making the distinction between "periodic" and "installment" payments and by the use of the express language: "Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument, shall not be considered periodic payments." These principal sums are thus each specified in "instruments" because of exact definition in the contracts and the promissory notes. Under the statutory language above quoted, such a crystalization by specification in an instrument would be sufficient. But, if the rule be adopted that the "decree" is controlling, as some opinions say,[6] still each of these principal sums was specified therein because of the incorporation of these fixed amounts by reference. There may be more exact methods of specifying a principal sum in terms of money, but none readily suggests itself. Nor was this by chance. In going over the negotiations, it is difficult to escape the idea that the wife was insistent upon the fixed principal sums of $18,000 and $12,000 and that petitioner finally agreed thereto.

The provision of the agreement that the husband would pay the income tax of the wife on these installments cannot change the law. It is true, such payments are contingent and may be considered as alimony. On the other hand, the intention of the parties to give the wife the $18,000 without any reduction is patent. Further, the law is not changed by the fact that the attorneys for the parties drew the final decree in such form that the contingent periodic payment and the monthly installments on $18,000 first and $12,000 afterwards were apparently lumped into one payment of $800 per month.

The remaining issue is entirely unconnected with those just ruled upon. In 1937, petitioner bought for $5,000 a stock of literary properties, including motion picture rights, literary rights and other property rights in about 2,000 manuscripts, scenarios and scripts for shooting motion pictures and in 75 novels and stage plays, more or less. One Bentel, a literary agent, suggested this purchase and was to share in the proceeds of sale after the purchase price had been recouped. None of the properties was sold. In 1945, petitioner sold the lot to an employee for $250, and claimed an ordinary loss. The Tax Court held that this was a "loss from the sale of capital assets held for more than six months."

Inherent in this conclusion were several determinations of fact which the court affirmatively made. It was found that "petitioner's only business or occupation was that of radio commentator and newspaper columnist." It was further found "he did not purchase the literary properties for use in that business," and that he did not establish that he has engaged in any business except that specified above. "He made an investment in the literary properties with the hope or expectation of selling them at a profit." He did not hold them "primarily for sale to customers in the ordinary course of his trade or business." He was not "engaged in a trade or business with respect to the literary properties." He did not show these "constituted stock in trade or property of a kind which would properly be included in inventory."

Since these facts are established, the Tax Court is correct in holding that the loss resulted from the sale of capital assets and subject to the provisions of § 117(b) and (d).

The decision of the Tax Court is modified accordingly.

6. See Harris v. Commissioner of Internal Revenue, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111.