Sheldon A. BERNSTEIN and Lorrie H. Bernstein, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 78–2648.

United States Court of Appeals, Ninth Circuit.

June 30, 1980.

Gilbert E. Andrews, Washington, D. C., on brief; Helen A. Buckley, Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before: SNEED and FERGUSON, Circuit Judges, and TEMPLAR *, District Judge.

SNEED, Circuit Judge:

The appellants[1] challenge a Tax Court decision in favor of the Commissioner which denied deductions by appellants of certain alimony payments. This appeal raises questions about the characterization of payments made pursuant to an alimony award for the purposes of applying sections 71 and 215 of the Internal Revenue Code, I.R.C. §§ 71, 215, and about the effect of recent developments in Nebraska law on the pertinent divorce decree. Jurisdiction rests on 26 U.S.C. § 7482(a) (1976). We affirm.

## I.

### FACTUAL BACKGROUND

Bernstein claimed deductions for amounts paid in 1972 and 1973 to his former wife in accordance with a divorce decree entered by a Nebraska court on April 24, 1972. He began making monthly payments to her immediately after the decree was entered. Three kinds of payments were ordered.[2]

James A. Thomas, Los Angeles, Cal., on brief; Matt C. Fragner, Thomas Shafran & Wasser (on brief), Los Angeles, Cal., for petitioners-appellants.

* Honorable George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

1. The appellants are husband and wife, but Mrs. Bernstein is involved only because she filed returns jointly with her husband for the relevant years. In the opinion we shall refer to Mr. Bernstein as the true appellant.

2. The pertinent provisions of the decree are as follows:

VI

(1) The Court further finds that the Defendant should be awarded alimony in gross, in the sum of $60,000.00, payable as follows: $1,000.00 per month for sixty months, the first of said monthly installments to be paid on May 1, 1972, and a like amount on the first day of each succeeding month until the full amount of $60,000.00 is paid. Said alimony in gross in the sum of $60,000.00 shall be payable irrespective of the death of either the Plaintiff or the Defendant, or the remarriage of the Defendant during said period of sixty months and judgment for the said sum of $60,000.00 shall be entered in favor of the Defendant and against the Plaintiff.

(2) At the termination of said sixty months, if the Defendant has not remarried, the Defendant is awarded additional alimony in the amount of $700.00 per month, payable on the first day of each succeeding month until the occurrence of the first of the following events:

(a) The death of the Plaintiff;

First, he was to pay $1,000 each month for five years. The decree described this aggregate amount of $60,000 as "alimony in gross . . . payable irrespective of the death of either the Plaintiff or the Defendant, or the remarriage of the Defendant during said period of sixty months." Next, at the expiration of five years, Bernstein was to pay $700 each month until his former wife's death, her remarriage, his own death, or the lapse of an additional twelve years. Finally, from the time of the divorce he was to make concurrent payments of $400 each month for the support of the daughter of the marriage, which payments would continue until she attained her majority, became self-supporting, married, or died. The decree stated that it did not become "final except for purposes of appeal for a period of six (6) months from" the date of entry.

Bernstein makes three arguments. First, he argues that the first five years' payments should be deemed part of the subsequent contingent payments and, accordingly, deductible as periodic payments under section 71(a)(1) of the Code. Alternatively, he argues that, the first five years' payments, though apparently satisfying an obligation which is not subject to judicial modification, should be deductible as a periodic payment because a Nebraska statute, passed during the divorce judgment's provisional period, subjected it to continuing court scrutiny and possible revision. Finally, and again alternatively, he argues that at least $700 of each of the first five years' payments should be deductible as the initial portion of the subsequent periodic payments to his former wife.

The Nebraska statute upon which Bernstein relies in making his second contention is the Uniform Divorce Recognition Act, enacted on July 6, 1972, which provides that "orders for alimony may be modified or revoked for good cause shown." Neb.Rev. Stat. §§ 42–365, 379(3) (A.S.Supp. & R.S. Supp.1972). The Nebraska Supreme Court has held that this statute does not apply to "judgments awarding alimony in gross entered previous to July 6, 1972." *Karrer v. Karrer*, 190 Neb. 610, 614, 211 N.W.2d 116, 119 (1973); *see also Kasper v. Kasper*, 195 Neb. 754, 240 N.W.2d 591 (1976); *Bryant v. Bryant*, 191 Neb. 539, 216 N.W.2d 162 (1974). Bernstein argues that the Uniform Divorce Recognition Act applies to his April 24, 1972 decree because at that time both statute and case law permitted awards of alimony to be revised or set aside during the six months following entry of a divorce decree. Neb.Rev.Stat. § 42–340 (repealed 1972); *Ziegenbein v. Damme*, 138 Neb. 320, 292 N.W. 921 (1940). Moreover, Bernstein points out that the decree stated expressly that it would not become final for six months. It follows, he argues, that it became final after July 6, 1972 and that the Uniform Act is applicable.

We think that Bernstein's arguments pose only two issues. The principal one is whether, for purposes of section 71(a)(1), all or any portion of what under section 71(c)(1) would otherwise be nondeductible installment payments should be considered deductible periodic payments when the divorce decree provides for *no* periodic payments *during* the installment period but provides that periodic payments *commence*

---

(b) The death of the Defendant;
(c) The remarriage of the Defendant; or
(d) The elapse [*sic*] of twelve (12) years from and after the date of the payment of the first $700.00 monthly installment.
All of the above and foregoing payments in (1) and (2) above shall be made by the Plaintiff to the Clerk of the District Court of Douglas County, Nebraska, and by said Clerk promptly remitted to the Defendant.

VII
The Court further finds that the Plaintiff should pay to the Defendant for the support and maintenance of the minor child, Sue E.

Bernstein, the sum of $400.00 per month and continuing until the occurrence of the first of the following events: (1) attainment of the child of the age of majority under the laws of Nebraska; (2) death of said child; or (3) said child becoming self-supporting or married. The first of such payments shall be made on May 1, 1972, and on the first day of each month thereafter while the same are payable and shall be paid by the Plaintiff into the office of the Clerk of the District Court of Douglas County, Nebraska, and by said Clerk promptly remitted to the Defendant for said purposes.

immediately *after* the installment period. The other issue is whether, for purposes of Treas.Reg. § 1.71–1(d), which is discussed below, the installment payments in this case were made contingent by the Nebraska Uniform Divorce Recognition Act of 1972.

## II.

### PERIODICITY OF PAYMENTS

Bernstein argues that the periodicity of payments for purposes of section 71(a)(1) should be determined by examining all payments required by the decree as a single stream of payments and by applying to that single stream the appropriate characterization. When this is done it is clear that the total amount that his former wife will receive and the duration of payments is uncertain. From this it follows, Bernstein insists, the payments are periodic. This conclusion is reinforced by the fact that his former wife received the value of one half the family assets under a separate and distinct property settlement provision in the decree.

The Commissioner rejects this approach. Initially he points out that the legislative history of section 71 makes clear that periodic payments are only those made "in recognition of the general obligation to support . . . ." H.Rep. No. 2333, 77th Cong., 1st Sess., at 72 (1942), *reprinted in* 1942–2 C.B. 372, 428; *see Coker v. United States*, 327 F.Supp. 169, 172–75 (D.Neb. 1971), *aff'd*, 456 F.2d 676 (8th Cir. 1972); *Sharp v. Commissioner*, 41 T.C.M. (P–H) ¶ 72,159 (1972). The Commissioner's primary argument, however, is that case law has established that payments pursuant to a divorce decree are not treated as a single stream but rather each type of payment is treated separately and subjected to individual analysis to determine its proper characterization. *Fidler v. Commissioner*, 231 F.2d 138 (9th Cir. 1956); *Hunt v. Commissioner*, 22 T.C. 561 (1954); *Glasgow v. Commissioner*, 21 T.C. 211 (1953); *see also Houston v. Commissioner*, 442 F.2d 40 (7th Cir. 1971); *Knowles v. United States*, 290 F.2d 584 (5th Cir. 1961); *Bartsch v. Commissioner*, 203 F.2d 715 (2d Cir. 1953) (mem.), *aff'g* 18 T.C. 65 (1952).

We agree with the Commissioner. Previously we have expressed a willingness to penetrate attempts to "camouflage" installment payments by means of a decree that combines them with periodic payments. *Fidler, supra,* 231 F.2d at 142. To treat payments that would be classified as installment payments if taken in isolation, as periodic merely because they precede such payments in time would add more confusion to an already adequately confused area of tax law. The parties to divorce decrees have considerable freedom in controlling the tax consequences of the divorce. The approach suggested by Bernstein would reduce the scope of this freedom. We believe this would be unwise.

Bernstein, however, relies on *Glasgow v. Commissioner, supra,* 21 T.C. 211 for the proposition that a payment to which the recipient has an indefeasible right may be treated, at least in part, as a periodic payment if it appears to have the same support purpose as clearly periodic payments required by the decree. In *Glasgow* the taxpayer and his then spouse had negotiated a settlement in advance of a divorce. The taxpayer undertook to pay $12,500 immediately on the granting of the divorce and $3,000 annually beginning on January 15, 1949, which was about one year after the divorce. The Tax Court found that $3,000 of the initial payment "was to be paid for the same purpose as the annually recurring payments of $3,000, which were stated [*sic*] to begin in January of 1949 . . . ." *Id.* at 217–18. The court, however, singled out no factual circumstances of the case as indicating this purpose. Bernstein points out that during the installment payment years he too was obliged to make no other payments for his ex-wife's support. However, the duration of his installment payments was five years while in *Glasgow* only a single balloon payment was involved. This might indicate that the purpose of the installment payments here was different from that of the balloon payment in *Glasgow.* The Commissioner also points out that the Tax Court here found no basis for

treating part of the taxpayer's installment obligation as contingent, but neither did the court in *Glasgow*. In brief, *Glasgow* provides support for Bernstein's position.

*Glasgow*, however, has never been followed on the point in question. Nor are we inclined to follow it here. In general, we are in agreement with the Tax Court when it observed:

> We may, we think, take judicial notice that divorce settlements or decrees not uncommonly provide some considerable amount payable immediately to the wife, in addition to regular or recurring payments for current support thereafter. We consider it reasonable to believe that Congress had such a practice in mind and did not intend to make the wife taxable upon the lump sum, original, or principal payment . . . , but that it was something in the nature of a division of capital . . . . At any rate, we think Congress failed to provide that such a payment was "periodic" . . . .

*Norton v. Commissioner*, 16 T.C. 1216, 1218–19, *aff'd*, 192 F.2d 960 (8th Cir. 1951). Therefore, we reject the first and third of Bernstein's arguments.

### III.

### EFFECT OF NEBRASKA'S ENACTMENT OF THE UNIFORM DIVORCE RECOGNITION ACT

As already indicated, Bernstein argues that the changes in Nebraska law have made the entire amount of "alimony in gross" periodic payments and thus deductible by him. He relies on regulations which provide that installment payments having the nature of, or in lieu of, alimony or an allowance for support, are income to the recipient and deductible by the payor if they are subject to the contingency of the death of either spouse, change in the economic status of either spouse, or remarriage of the recipient. Treas.Reg. § 1.71–1(d)(3)(i). An installment obligation that is unconditional on its face is considered subject to an appropriate contingency if local courts retain power to modify the obligation. Rev.Rul. 59–190, 1959–1 C.B. 23; *see*

*Lounsbury v. Commissioner*, 37 T.C. 163 (1961). The Commissioner contends that this regulation does not apply to the payments in question because the Nebraska Supreme Court has held that the statute permitting modification of alimony awards is not applicable to awards entered before July 6, 1972. This court should not question the constitutional basis of the Nebraska court's conclusion, the Commissioner insists, because "there is no reason to believe that [it] would not" reach the same result on the basis of the state constitution.

■ We essentially agree with the Commissioner. The holding in *Karrer v. Karrer, supra*, was "that the provisions of section 42–365 [which permits modification of all alimony awards] do not apply to judgments awarding alimony in gross *entered* previous to July 6, 1972" (emphasis added). An immediately preceding paragraph explains the holding as necessary to prevent a legislative act from retroactively impairing "rights which have *vested* by virtue of the judgment of a court." *Id.* (emphasis added). Obviously this result does not mesh well with the fact that Nebraska alimony awards entered less than six months before July 6, 1972 were subject to revision and were not vested at least to this extent. Nevertheless, the Nebraska Supreme Court has twice reaffirmed the holding. *Kasper v. Kasper, supra; Bryant v. Bryant, supra*. In *Kasper*, moreover, the judgment under consideration had been entered, like the Bernsteins', during the six month period preceding July 6, 1972. There is no escape from the conclusion that the Nebraska court would find the statute inapplicable to the Bernsteins' divorce decree. It follows, therefore, that Nebraska law as it stands does not make the installment payments contingent.

■ We reject the suggestion that this court should reexamine the Nebraska Supreme Court's interpretation of the federal Constitution. Even were we to do so, the effort would be useless. We cannot in this case reverse *Kasper* nor render it ineffective. Despite what we might say or think,

the law in Nebraska remains that the installment payment portion of the Bernsteins' divorce settlement is not subject to judicial modification. That fact controls our decision.

Affirmed.