ROBERT P. WHITE, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

NANCY S. WHITE, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 7256–76, 7754–76.     Filed February 6, 1984.

*Douglas H. Walter, John W. Rotunno*, and *Colleen A. Khoury*, for the petitioner in docket No. 7256–76.

*Michael K. Cavanaugh, A. Carter Howard, Robert E. Arroyo*, and *Peter M. Davis*, for the petitioner in docket No. 7754–76.

*Lawrence C. Letkewicz*, for the respondent

HAMBLEN, *Judge*: Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Year | Robert P. White | Nancy S. White |
|------|-----------------|----------------|
| 1969 | | $14,170 |
| 1970 | | 16,283 |
| 1971 | $19,473 | 14,565 |
| 1972 | 16,466 | 14,197 |
| 1973 | 17,937 | 14,182 |
| 1974 | 14,765 | 14,431 |

The primary issue[1] for decision is whether or not certain payments made by petitioner Robert P. White (hereinafter Robert) to his former wife, petitioner Nancy S. White (hereinafter Nancy), are properly deductible by him and includable by her in gross income. In the event that this issue is determined adversely to Nancy, then we must also decide whether the applicable statute of limitations on assessment bars respondent from asserting the determined deficiencies against Nancy for the tax years 1969 and 1970.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Robert resided in Northbrook, Ill., when he filed his petition in this case. For each of the years in issue, he timely filed his individual Federal income tax return with the Internal Revenue Service Center at Kansas City, Mo. Nancy resided in Glenview, Ill., when she filed her petition in this case. For each of the years in issue, she timely filed her individual Federal

---

[1]Other issues remain as to petitioner Nancy S. White. However, our determination of the issues addressed in this opinion will resolve such issues as well.

income tax return with the Internal Revenue Service Center at Kansas City, Mo.

Petitioners were legally married to each other in Winnetka, Ill., on November 16, 1942. On February 28, 1969, they were divorced by a judgment entered in the Circuit Court of Cook County, Ill. Petitioners parented five children during their marriage, three of whom had not attained majority at the time of petitioners' divorce.

Petitioners entered into a "Memorandum of Agreement" (hereinafter agreement) dated February 27, 1969. The judgment of divorce incorporated the terms of the agreement. Each petitioner received professional advice in the drafting of terms, and extensive negotiation occurred before petitioners entered into the agreement. Each petitioner was represented by legal counsel in the negotiation of the agreement, and Robert was also represented by a well-known accounting firm.

Among its various paragraphs, the agreement provided for division of property, sale of the marital residence, payment by Robert to Nancy in the amount of $100,000 as a property settlement, and payment of specified sums by Robert to Nancy for the support of their minor children. In addition, the agreement contained the following paragraphs concerning payment by Robert to Nancy:

5. The husband further covenants and agrees that he will pay to the wife as alimony in gross, and in the lieu and stead of permanent alimony, certain sums of money in the amount, and in manner and form, as hereinafter set forth, to wit:

(a) The sum of One Hundred Eighty Thousand Dollars ($180,000.00) in equal monthly installments of Two Thousand Five Hundred Dollars ($2,500.00) each, commencing on the first day of the month succeeding that in which there shall be entered any judgment of divorce in favor of the wife and against him in the cause aforementioned, and continuing upon the first day of each and every month thereafter, or upon the business date next thereto succeeding, until a total of seventy-two (72) such payments shall have been made. The obligation of the husband to pay, and the right of the wife to receive, the entirety of the sum aforesaid shall not be deemed to be defeasible by the death or the remarriage of either of the parties hereto, but shall be deemed to be payable in all events. In the event of the death of the wife prior to the expiration of the period during which such payments are to be made, any installments thereof due and owing at the time of her death, or to become due thereafter, shall be payable to her personal representative.

(b) In addition to the amounts for the payment of which covenant is made in the sub-paragraph hereof next preceding, the husband covenants and agrees that he will pay to the wife an additional sum not to exceed Five

Hundred Forty Thousand Dollars ($540,000.00) in equal monthly install-ments of Two Thousand Two Hundred Fifty Dollars ($2,250.00) each, commencing on the first day of the month succeeding that in which there shall be entered any judgment for divorce in favor of the wife and against him in the cause aforementioned, and continuing on the first day of each and every month thereafter, or upon the business date next thereto succeeding, until the first to happen in point of time of the following events:

    (i) The death of the wife,
    (ii) The remarriage of the wife, or
    (iii) The making of two hundred forty (240) such payments.

    (c) In the event of the remarriage of the wife at a date prior to the making by the husband of the entirety of the payments for which covenant is made in sub-paragraph (b) of this paragraph, the husband covenants and agrees that in the lieu and stead of the sums for the payment of which covenant is made in the said sub-paragraph (b), he will pay to the wife the sum of One Thousand One Hundred Twenty Five Dollars ($1,125.00) per month, commencing on the first day of the month succeeding that in which such marriage shall have occurred, and continuing on the first day of each and every month thereafter, or upon the business date next thereto succeeding, until the first to happen in point of time of the following events:

    (i) The death of the wife,
    (ii) The making of one hundred twenty (120) such additional payments, or
    (iii) The expiration of two hundred forty (240) months from the date of the judgment for divorce.

In the event of the death of the husband at a time prior to the making by him of the entirety of the sums for the payment of which covenant is made under any of the sub-paragraphs and contingencies envisioned in this paragraph, the wife shall be deemed to have a valid and provable claim against the estate of the husband to the extent of any sums due and owing at the time of his said death, or to become due thereafter, under the same terms and conditions, and in the same amounts, as if such death had not occurred.

6. It is further mutually covenanted and agreed by and between the parties hereto that the amounts payable to the wife under and by virtue of the terms of paragraph 5 of these presents shall be deemed to be payments made by the husband to the wife in discharge of a legal obligation to support and maintain the wife, and to be made in connection with an agreement incident to a judgment for divorce within the meaning and purview of Sections 71 and 215 of the United States Internal Revenue Code of 1954, as amended, or of similar or comparable provisions of any revenue code, or amendments thereto, hereafter enacted, and that such payments, for the purposes of any such Internal Revenue Code or amendment thereto, shall be includible in the gross income of the wife, and deductible from the adjusted gross income of the husband, to the full extent permissible under such law or laws.

The agreement went on to provide for the temporary adjustment of payment terms for amounts specified in para-

graph 5(b) in the event of decreased annual income of Robert.[2] While describing the procedure for payment adjustment, the agreement made clear that payment amount would not be affected. It stated in relevant part:

7. * * * It is mutually understood and agreed by and between the parties hereto that nothing herein contained shall be deemed to be in derogation of the obligation of the husband to pay, or of the right of the wife to receive, the total amount payable by the husband to the wife as a lump sum settlement as alimony in gross and in lieu of alimony under the terms of paragraph 5 of these presents, it being the intention of the parties hereto * * * not to impair or diminish the total amount to be paid to the wife under the terms and conditions of the said paragraph 5 of these presents, * * *

The total amount to be paid by Robert to Nancy under paragraph 5, as well as the division of this total amount between subparagraphs 5(a) and 5(b), were the product of intense negotiations, analyses, and several drafts of the agreement. As finally structured and agreed to by both parties, paragraph 5 of the agreement required Robert to pay to Nancy the total sum of $720,000 in monthly installments over a 20-year period. Each monthly payment consisted of two elements. Subparagraph 5(a) described the first element, which consisted of an indefeasible amount of $180,000, payable over a 6-year period within the overall 20-year term in monthly installments of $2,500 each. Subparagraph 5(b) described the second element, which consisted of an additional amount of $540,000 payable over the entire 20-year term in monthly installments of $2,250 each. Unlike the indefeasible payments of subparagraph 5(a), the subparagraph 5(b) element of each monthly payment was subject to contingencies for reduction or elimination upon Nancy's remarriage or death, as specified.

Following the parties' divorce, Robert made timely payments to Nancy under the agreement in each of the last 10 months of 1969 and in each month of the years 1970 through 1974. He paid to her $4,750 per month by way of a single check for each month. Robert deducted the entire amounts paid by him under all of paragraph 5 of the agreement on his individual Federal income tax returns for each of the years in

---

[2]The procedure set forth in this provision is not disputed here by the parties, nor is there any argument as to its possible impact on petitioners' respective tax liabilities.

issue. Therefore, he deducted $47,500 on his 1969 return, and $57,000 on his returns for each of the relevant years thereafter. Nancy, however, included in her gross income only those amounts received by her under subparagraph 5(b) of the agreement on her individual Federal income tax returns for each of the years in issue, but did not include any amounts received by her under subparagraph 5(a) of the agreement. Therefore, she included only $22,500 of the paragraph 5 payments as gross income on her 1969 return, and $27,000 on her returns for each of the relevant years thereafter.[3]

Adopting a "whipsaw" posture, respondent issued notices of deficiency against each petitioner,[4] asserting that Robert was not entitled to any deductions for amounts paid to Nancy pursuant to subparagraph 5(a) of the agreement, and that Nancy had to include such amounts in her gross income. Respondent offered no challenge to the compatible treatment by Robert and Nancy of the subparagraph 5(b) amounts, and they are not here in dispute. Rather, only a determination of the proper treatment of the subparagraph 5(a) amounts is required.

OPINION

The deductibility of amounts paid by Robert under subparagraph 5(a) is determined by section 215[5] which, in turn, is determined by reference to section 71. Section 215(a) provides in relevant part:

Sec. 215(a). GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

Therefore, any disqualification from inclusion by the recipient spouse under section 71 will preclude deduction by the payor under section 215.

---

[3]On her 1969 return, Nancy reported a total gross income of $26,149. On her 1970 return, Nancy reported a total gross income of $28,384.

[4]The notice of deficiency for all tax years in issue was duly mailed to Nancy on May 24, 1976. In January of 1976, Nancy and respondent entered into a special consent agreement, Form 872-A, which extended the 6-year statute of limitations on assessment under sec. 6501(e)(1)(A), if applicable, until 60 days after the decision in the instant case becomes final.

[5]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the tax years in issue.

Section 71(a)(1) sets forth the requirements for inclusion in gross income of payments received pursuant to a decree of divorce or separate maintenance.[6] In sum, qualification for inclusion of payments under section 71(a)(1) requires: (1) That the payments are periodic; (2) that the payments are attributable to the payee's relinquishment of support rights, as opposed to property rights, child support, or other distinguishable sources of obligation; (3) that the payments are made pursuant to a decree of divorce or separate maintenance or to a written instrument incident thereto; and (4) that the payor is under a legal obligation to make the payments.[7]

In the instant case, the requirements that payments be made pursuant to a decree of divorce and that the payor be under a legal obligation to make the payments are not in issue. The judgment of divorce entered by the Circuit Court of Cook County satisfies these requirements, and the legality of the payments it orders has not been challenged.[8] Nor is any problem presented regarding the classification of payments as for support, as opposed to as arising from other sources of obligation. The parties themselves classify the disputed payments as support payments and label them as "alimony in gross." It is true that the labels assigned either by the parties or the courts are not determinative. *Gammill v. Commissioner*,

---

[6]Sec. 71(a) provides: "If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation."

[7]As an alternative to inclusion under sec. 71(a)(1), sec. 71(a)(2) provides identical tax treatment for payments received pursuant to a written separation agreement. Qualification for inclusion in gross income under sec. 71(a)(2) has the same requirements as does sec. 71(a)(1) inclusion, except that sec. 71(a)(2) does not contain the requirement that payments be made pursuant to a legal obligation of payment. In the instant case, payments by Robert to Nancy might be viewed as made either under the terms of the divorce decree or of the preexisting agreement. For the effect of incorporation of the terms of an agreement by a divorce decree and of the dual remedies available under the applicable law of the State of Illinois, see our recent opinion in *Mass v. Commissioner*, 81 T.C. 112 (1983). In the instant case, however, the legal obligation of Robert to make the disputed payments to Nancy is not contested. Therefore, the tax consequences will be the same whether the facts are analyzed under sec. 71(a)(1) or sec. 71(a)(2). Hence there is no need to distinguish between payments made pursuant to the decree and those made pursuant to the agreement, and our opinion in this case is limited to analysis under sec. 71(a)(1).

[8]We note the ongoing litigation between Robert and Nancy in the courts of Illinois resulting from Robert's petition seeking information of the divorce decree to require inclusion of subpar. 5(a) amounts by Nancy in her gross income for tax purposes. However, this controversy deals only with payment consequences and does not challenge the underlying legal payment obligation in the sense contemplated by sec. 71(a)(1).

73 T.C. 921 (1980), affd. 710 F.2d 607 (10th Cir. 1982); *Thompson v. Commissioner*, 50 T.C. 522 (1968); *Bardwell v. Commissioner*, 38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963). Rather, determination of the nature of payments requires examination of surrounding facts and circumstances. *Gammill v. Commissioner, supra*; *Jackson v. Commissioner*, 54 T.C. 125 (1970); *Lambros v. Commissioner*, 459 F.2d 69 (6th Cir. 1972), affg. a Memorandum Opinion of this Court. In the instant case, the facts convince us that the label assigned to the payments by the parties comports with the true nature of the payments. Our conclusion is buttressed by the fact that child support, property settlement, and other interspousal payments which might be expected to be made in a divorce context are specifically provided for elsewhere in the agreement.

All other requirements of section 71(a)(1) having been met, our resolution of this case depends on whether or not the payments made by Robert to Nancy under subparagraph 5(a) of the agreement meet the periodicity requirement of section 71(a)(1). Under the general rule of section 71(c)(1), installment payments discharging a principal sum obligation are not treated as periodic payments. See also sec. 1.71–1(d)(1), Income Tax Regs. Section 71(c)(2) provides a statutory exception to the general rule of section 71(c)(1). Subject to a percentage limitation,[9] section 71(c)(2) permits installment payments of a principal sum obligation to be treated as periodic payments if the period for payment extends more than 10 years beyond the date of the decree or agreement. In addition to this statutory exception, section 1.71–1(d)(3)(i), Income Tax Regs., provides a further exception under which installment payments may be treated as periodic. The regulation provides that, where the payment period extends for 10 years or less from the date of the decree or agreement, installment payments may nonetheless be treated as periodic if both of the following conditions are met:

---

[9]The limitation of sec. 71(c)(2) is that "the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum." Application of this limitation is not at issue in the instant case.

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

The payments required by Robert under subparagraph 5(a) of the agreement were indefeasible and, by the language of the agreement itself, were "deemed to be payable in all events." Thus, they were not subject to any of the specified contingencies of the first condition of section 1.71–1(d)(3)(i), Income Tax Regs. The regulatory exception to the general rule of section 71(c)(1), therefore, does not apply to the facts of the case now before us; relief from section 71(c)(1) can be found only if the statutory exception of section 71(c)(2) applies. Such application depends on whether the payment period is found to extend more than 10 years beyond the date of the decree of agreement.

Under Nancy's view, subparagraph 5(a) of the agreement does not meet this temporal requirement. Relying on a literal reading of the language of subparagraph 5(a), she argues that payments are to be made for a period of only 72 months (i.e., 6 years) beyond the date of the decree. She concludes that, because 6 years is not "more than 10 years," the threshold of section 71(c)(2) is not crossed. Therefore, the general rule of section 71(c)(1) applies, the periodicity requirement of section 71(a)(1) is not met, and she is not required to include any payments received by her under subparagraph 5(a) of the agreement in her gross income under section 71.

Robert takes a more expansive view of the meaning of subparagraph 5(a) and urges that it be read not as a unitary provision, but in context as an element of paragraph 5 as a whole. As he argues, the 10-year requirement of section 71(c)(2) should be applied to paragraph 5 as a whole, and not separately to each of its specific parts. Robert regards all payments described in paragraph 5 of the agreement, whether in subparagraph 5(a) or 5(b), as part of a single payment stream flowing from him to Nancy in discharge of his support obligation to her. Since the entire stream is contemplated to last longer than 10 years beyond the date of the decree,[10] the

---

[10] In fact, subpar. 5(b) of the agreement contemplates payments over a period of 20 years.

requirement of section 71(c)(2) is met. Therefore, the general rule of section 71(c)(1) does not apply, and the periodicity requirement of section 71(a)(1) is satisfied; hence, all payments under paragraph 5 of the agreement are includable in gross income by Nancy under section 71(a) and correspondingly are deductible by Robert under section 215(a).

Each petitioner has presented various documents and witnesses to events leading up to the entry into the agreement, including drafts of the agreement, proposed changes, and recollections of conversations as to both substantive provisions of the agreement and the tax consequences thereof. It is not uncommon for this Court to look beyond the four corners of a divorce agreement to ascertain, the intent of the parties. See, e.g., *Schottenstein v. Commissioner*, 75 T.C. 451 (1980); *Bardwell v. Commissioner, supra.* This practice is consistent with Federal law admitting evidence of circumstances and intent in interpreting a written agreement, as embraced by the Court of Appeals for the Seventh Circuit.[11] As summarized in that court's statement of Illinois law in *Ortman v. Stanray Corp.*, 437 F.2d 231, 235 (7th Cir. 1971):

relevant parol evidence is always admissible to assist in the determination of what the words used in an integrated writing mean; and the parol evidence rule is placed in its proper role of focusing interpretation on the meaning of the terms embodied in the writing and of rendering all evidence inoperative to vary those terms once their meaning has been discovered. Admitting evidence of prior negotiations and agreements for the purpose of discovering the meaning of the terms used in the integration does not violate the parol evidence rule. * * * [Fn. refs. omitted.]

See also *International Minerals & Chemical Corp. v. Husky Oil Co.*, 485 F.2d 153 (7th Cir. 1973); *Lucie v. Kleen–Leen, Inc.*, 499 F.2d 220 (7th Cir. 1974).

We have considered the extrinsic evidence submitted by petitioners in this case and have reviewed the testimony of each petitioner's witnesses. While we find it enlightening, and supportive of the conclusions we reach in this opinion, it is unnecessary to our resolution of this controversy.[12] Rather, examination of the agreement, itself, impels us to the conclu-

---

[11] The Court of Appeals for the Seventh Circuit is the court to which an appeal in the instant case would lie.

[12] For this reason, we need not further address the several evidentiary issues argued by petitioners in this regard.

sion that Robert's interpretation is proper; the payment components described in subparagraphs 5(a) and 5(b) of the agreement are part of a single stream of support payments, and the tax consequences thereof must be analyzed within their framework.

It is true that disparate obligations cannot be recharacterized as parts of a single payment. See, e.g., *Bernstein v. Commissioner*, 622 F.2d 442 (9th Cir. 1980), affg. a Memorandum Opinion of this Court; *Houston v. Commissioner*, 442 F.2d 40 (7th Cir. 1971), affg. 52 T.C. 815 (1969); *Bartsch v. Commissioner*, 203 F.2d 715 (2d Cir. 1953), affg. 18 T.C. 65 (1952). For example, child support or property settlement payments cannot be analyzed as mere components of support payments in order to be eligible for deduction under section 215(a). Conversely, where the requirements of section 71(a) are met, the resulting tax treatment cannot be avoided by linking a support component to other obligations.

The prohibition against the artificial joinder of payments is intended to prevent the merger of *different* types of payments. Where payments are of the *same* type, the prohibition is not applicable. In petitioners' case, all payments under both subparagraphs of paragraph 5 were intended as, and functioned as, installment payments in discharge of a principal sum obligation in lieu of support payments. This conclusion is supported not only by the evidence of negotiations leading to the agreement, but also by the terms and structure of the agreement, itself. Other types of payments, e.g., child support and property settlement payments, were separately provided for elsewhere in the agreement and were clearly delineated according to purpose. Support payments were provided for in paragraph 5, and both subparagraphs within paragraph 5 concerned this payment function. Thus, the payments described in subparagraphs 5(a) and 5(b) were of the *same* type; the cited precedents prohibiting merger of payments of different types are, therefore, not applicable.

The structure of the agreement enhances this interpretation of the substantive meaning of its provisions. We note that the payments required under subparagraphs 5(a) and 5(b) were included within the single vehicle of paragraph 5, rather than separated into distinct paragraphs as were the dissimilar payment obligations. Furthermore, references to support pay-

ments in subsequent paragraphs of the agreement regarded paragraph 5 as an entity without distinction between its subparagraphs. Paragraph 6 referred to payments under paragraph 5 in the aggregate and specified their similar nature as support payments. It stated in relevant part:

the amounts payable to the wife under and by virtue of the terms of paragraph 5 of these presents shall be deemed to be payments made by the husband to the wife in discharge of a legal obligation to support and maintain the wife * * *

Paragraph 7 similarly classified the payments as part of a single income stream intended for support. It referred to paragraph 5 as a whole, characterizing the payments described under both subparagraphs as "the total amount payable by the husband to the wife as a lump sum settlement as alimony in gross in lieu of alimony under the terms of paragraph 5." Finally, petitioners' own intent that the payments be viewed as integrated and as support payments was explicit in paragraph 6. It stated that amounts payable under paragraph 5:

shall be includible in the gross income of the wife, and deductible from the adjusted gross income of the husband, to the full extent permissible under [the Internal Revenue Code of 1954, its similar successors, or amendments thereto] * * *

In conclusion, we view subparagraphs 5(a) and 5(b) of the agreement not as imposing separate payment obligations which must be separately tested, but rather as describing two components of a single support obligation. Although the form of paragraph 5 may vary from that commonly adopted, its import is no different than that of any agreement requiring installment payments of a principal sum support obligation according to a schedule of decreased installment amounts. It is as if paragraph 5 were written to require a principal sum payment of $720,000 payable over 20 years in monthly installments of $4,750 during years 1 through 6 and $2,250.00 during years 7 through 20. Under this construction, the insertion of contingencies applicable to only a portion of the total amount of each installment during years 1 through 6 is irrelevant. Because the overall payment period extends for 20 years beyond the date of the decree, qualification under

sections 71 and 215 depends upon the statutory exception of section 71(c)(2), not upon the regulatory exception of section 1.71–1(d)(3)(i), Income Tax Regs. Thus, the insertion of contingencies into subparagraph 5(b) of the agreement may serve an economic or social purpose, but they are inapplicable for Federal income tax purposes as beyond the scope of section 71(c)(2).

We hold that all payments made by Robert to Nancy under all provisions of paragraph 5 of the agreement, including both subparagraphs 5(a) and 5(b), are to be treated as periodic under the statutory exception to section 71(c)(1) provided in section 71(c)(2). Therefore, all requirements of section 71(a) have been met, and Nancy must include all paragraph 5 payments received by her in her gross income. Correspondingly, Robert is entitled under section 215(a) to deduct all payments made by him to Nancy pursuant to both subparagraphs of paragraph 5 of the agreement.

Having decided the issue of includability under section 71(a) adversely to Nancy, we must now consider her claim that the applicable statute of limitations on assessment bars respondent from asserting the determined deficiencies against her for the tax years 1969 and 1970. Section 6501(a) provides as a general rule that respondent must make an assessment of tax within 3 years after a return is filed.[13] However, section 6501(e)(1)(A) extends this statute of limitations to 6 years after filing in a case where a taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated on the return.

Nancy's 1969 gross income, as stated on her return, was $26,149. The omitted payments received pursuant to subparagraph 5(a) of the agreement for its 10 operational months during 1969 totaled $25,000. Nancy's 1970 gross income, as stated on her return, was $28,384. The omitted payments received pursuant to subparagraph 5(a) of the agreement during 1970 totaled $30,000. Because the omitted amounts clearly exceed 25 percent of the stated amounts in each year, the 6-year statute of limitations of section 6501(e)(1)(A) applies. Therefore, assessment of taxes due for tax years 1969 and 1970

---

[13]Under sec. 6501(b)(1), a return filed before the last day prescribed for filing is considered as filed on such last day. Thus, Nancy's timely filed 1969 return is deemed filed on Apr. 15, 1970; her timely filed 1970 return is deemed filed on Apr. 15, 1971.

would have been timely until April 16, 1976, and April 16, 1977, respectively.

The statutory notice of deficiency for each of the disputed tax years was duly mailed to Nancy on May 24, 1976. This is unquestionably timely with regard to the statute of limitations applicable to the year 1970. However, it is beyond the April 15, 1976, expiration date which applied to Nancy's return for tax year 1969. Respondent is nonetheless not barred from assessing the deficiency for tax year 1969 by mailing of notice on May 24, 1976. In January of 1976, prior to the April 15, 1976, expiration date, Nancy and respondent entered into a special consent agreement, Form 872–A, which extended the 6-year statute of limitations on assessment under section 6501(e)(1)(A), if applicable, until 60 days after the decision in the instant case becomes final. Therefore, the agreement prevents the otherwise applicable 6-year statute of limitations from barring assessment of a deficiency for tax year 1969 by respondent. We hold that the notice of deficiency was timely mailed to Nancy with regard to tax years 1969 and 1970.

To reflect the foregoing,

*Decision will be entered for the petitioner in docket No. 7256–76.*

*Decision will be entered for the respondent in docket No. 7754–76.*